**In re BARCLAY PARK CORPORATION.**

**SWANSON v. BARCLAY PARK CORPORATION et al.**

**No. 418.**

Circuit Court of Appeals, Second Circuit.
June 7, 1937.

596

Burnstine, Geist & Netter and Netter & Netter, all of New York City (George E. Netter, Isaac Katz, and Morris A. Marks, all of New York City, of counsel), for appellant Fred Swanson.

Simpson, Thacher & Bartlett, of New York City (Robert H. O'Brien, of New York City, of counsel), for debtor-appellee.

Sage, Gray, Todd & Sims, of New York City (Melber Chambers, of New York City, of counsel), for New York Trust Co. as trustee-appellee.

William A. Stern II, of New York City, for John T. Clarke and Lillie Vreeland, first mortgage bondholders, filing brief in objection to plan of reorganization, though not appealing.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the owner of $19,000 (at par value) first mortgage 6½ per cent. bonds of the Barclay Park Corporation from an order confirming a plan of reorganization proposed by it in a proceeding which it had instituted under section 77B of the Bankruptcy Act (11 U.S.C. A. § 207).

The mortgage securing the bonds was upon a lease from the New York State Realty & Terminal Company to the debtor under which, as of December 31, 1936, the latter had a total liability of $4,111,827.90 for rent, construction advances, and interest. Of this amount approximately $2,130,000 was in arrears at the above date. The bonds secured by the mortgage on the leasehold amounted to $1,068,500 in addition to interest thereon which has been unpaid since December 1, 1931. The interest amounted to upwards of 32½ per cent. of the principal of the bonds. It also had outstanding an indebtedness of $194,000 upon which there was accrued interest of $18,570.14, running at the rate of 5½ per cent., secured by a chattel mortgage to Central Hanover Bank & Trust Company as trustee upon furniture belonging to a wholly owned subsidiary of the debtor. The debtor likewise had outstanding 7 per cent. unsecured debenture notes amounting to $1,125,000, upon which there was unpaid interest of $479,062.50. Besides these it had certain other unsecured creditors holding what are termed special claims, aggregating $53,900, and general claims, amounting to $27,000, and had outstanding stock consisting of 48,000 shares of common stock of no par value.

The business of the debtor was the operation of the Barclay Hotel on East Forty-Eighth street, New York City. The hotel was built on leased premises through advances made by the landlord to the debtor. These advances were to be repaid by the tenant with interest by means of annual amortizations. The debtor's assets, aside from the leasehold, consisted of the furniture already mentioned belonging to its subsidiary and said to have an estimated market value of $287,000, and a value in the hotel, while operated as a going concern, of about $400,000. This furniture was subject to the chattel mortgage we have referred to held by Central Hanover Bank & Trust Company as trustee to secure the balance of $194,000, with accrued interest at the rate of 5½ per cent. amounting to $18,570.14, making an aggregate of $212,570.14. In addition to this, the debtor had other furniture carried on the balance sheet at $81,562.06, and china, glassware, linen, and silver, carried at $56,970.14. Its remaining assets of cash in bank, accounts receivable, inventories, prepaid expenses, and deferred expenses appear on the balance sheet at approximately $225,000. It is entirely plain that the debtor is in a well-nigh desperate financial condition and that eviction by the landlord for nonpayment of rent would destroy even the slightest hope of rehabilitation.

The plan of reorganization offered by the debtor, and confirmed in the District Court, proposes to require the mortgage

bondholders to surrender their bonds, cancel the mortgage, and to accept in lieu thereof first preferred stock of the debtor for three-fourths of the principal of their bonds and second preferred stock for the remaining one-fourth of the principal. They are to receive no securities for accrued and unpaid interest which is more than 32½ per cent. of their claims. The creditors who hold the chattel mortgage on the furniture are allowed to retain their lien. The unsecured creditors are allowed one-fourth of the principal of their claims in first preferred stock and three-fourths in second preferred stock, they likewise foregoing all claims for unpaid interest. The old stockholders are to receive common shares in exchange for their present stock, share for share, and the landlord is to waive arrears of rent under the existing lease amounting to more than $1,320,000 and to modify the lease by lowering the future rent and by not requiring payment of the arrears and the amortization of the principal of the advances for the construction of the building and interest to the amount of $449.019.54. As we have said, the plan involves the surrender of the mortgage of the bondholders and the substitution of stock with payment of dividends which, if they should be earned, would be far less than the interest provided for in the mortgage. The plan has been accepted by more than three-fourths of the bondholders and noteholders and more than two-thirds of the stockholders of the debtor.

Section 77B (f) (1), Bankr.Act (11 U.S.C.A. § 207(f) (1), provides that after hearing objections the judge shall confirm the plan if satisfied that "it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders." In spite of the fact that the plan has been adopted after the dissent of only $19,000 first mortgage bonds belonging to the appellant and $9,000 other first mortgage bondholders who have not appealed but are represented by William A. Stern II, who has filed a brief on their behalf, we think it is impossible to sanction the plan. It cancels all past-due interest of the secured bondholders, amounting to upwards of 32½ per cent. of their claims and reduces their future payments of income, for the stock is to pay no dividends prior to 1941 and then only 2½ per cent. It cancels past-due interest of the general unsecured creditors and gives them first preferred stock to the

extent of one-fourth of the principal of their claims and second preferred stock to the extent of one-fourth of such principal, and gives the old shareholders, who apparently have no equity in the debtor's property, common stock in the corporation in the amount they have theretofore held. It thus subordinates the claims of the first mortgage bondholders to the extent of 25 per cent. thereof to 25 per cent. of the claims of the general creditors and prefers the entire principal of the claims of the general creditors to the claims of the first mortgage bondholders for arrears of interest. We cannot say that the allocation of securities as between the first mortgage bondholders and the unsecured general creditors was not fair. The debtor seems to have had free assets of considerable value to which the creditors whose claims were secured by the first mortgage and the unsecured general creditors might equally resort, and the value of the mortgaged lease except for the concessions made by the landlord to the tenant was doubtless slight. It may well be that the negotiations which ended in the plan as outlined had as fair a result as human ingenuity could be expected to reach as between the creditors. But we see no justification for canceling large amounts of interest on the claims of either the secured or the general creditors and giving common stock to persons who had no interest left in the enterprise. It was to prefer the stockholders at the expense of the creditors.

The only serious argument in support of such discriminatory provisions is that the landlord was in a position to evict the debtor and thus terminate the enterprise and that he announced that he would not consent to any plan of reorganization unless the parties would co-operate and junior security holders should not be frozen out. But it nowhere appears that he insisted upon an arrangement which preferred stockholders to the secured bondholders or the general creditors. The very life of the enterprise is in the lease which secures the claims of the first mortgage bondholders and, if there is any equity in it which may be thought to arise out of an anticipated revival of business that will justify the recognition of the stockholders in a reorganization of the corporation, the plan must not discriminate in their favor by preferring their claims to those of the secured or,

indeed, of any creditors as to interest on the indebtedness owing to them.

We have already said that the stockholders are furnishing no additional money or other consideration for retaining a stock interest that is given preferential rights as against the claims of the first mortgage bondholders and the unsecured general creditors. The least that the creditors should get would seem to be some share in the common stock if their rights to interest on their loans are to be cut down.

■ .It is argued that the stockholders represent the present management of the hotel and that the management is valuable and indeed necessary to the enterprise and that the manager-stockholders will "walk out" if the proposed plan does not go through and leave the hotel to its fate. But there is no binding agreement on their part to remain which might afford a justification for giving them a stock interest and, if their managerial skill is vital to the success of the hotel, any stock issued to insure the continuance of their relation ought to go to those stockholders who are of use to the enterprise and agree to act in its behalf, and not to all stockholders as such. Indeed, the supposed advantages of retaining the existing management seem to be a matter of inference, if not of speculation, supported by the oral statements of attorneys instead of by testimony. Such a .so-called "record" we have frequently deprecated. Indeed, many pages of it form no proper part of a case on appeal and should never have been printed.

■ To justify a retention of a stock interest by the present shareholders it should appear that they have furnished an additional consideration or have an equity in the estate of the debtor after the rights of the creditors are fully provided for in some way. In re 620 Church St. Corp., 299 U.S. 24, 26, 27, 57 S.Ct. 88, 89, 81 L.Ed. ——.

We do not attempt to say what plan may be properly adopted if the landlord should take the position that no other than the one proposed will save the debtor from eviction, but we can see no reason for his taking such a stand, and, upon the record before us, are not satisfied that he insisted upon the discriminating provisions which render the plan on its face an unfair one. The order confirming it is accordingly reversed.

The order confirming the plan of reorganization is reversed.