## In re WILTON REALTY CORPORATION.
### No. 22770.

District Court, E. D. Michigan, S. D.
Dec. 6, 1938.

Lewis Daniels and George E. Brand, both of Detroit, Mich., for Wilton Realty Corp.

LEDERLE, District Judge.

A petition for reorganization, in accordance with the provisions of Section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207, was filed in this cause on May 27, 1937.

The Wilton Realty Corporation, a Michigan corporation, was incorporated October 21, 1931. The original incorporators were Adolph Meyers, Emma Meyers, Alfred Meyers, and Elsa B. Koploy, all representatives of the same family.

The original capital subscribed was $10,-000, which was paid in cash, and the capital has not been increased up to this date. The entire capital of the company was used to purchase the title to the Wilton Apartments, an apartment house located in the city of Detroit at number 3200-8 West Boston Boulevard. This apartment house contains twenty-eight apartments and is well-

constructed and well-suited for the purpose for which it was intended. It is in a good location and has, for a number of years, produced more than sufficient income to meet operating expenses and taxes.

The building was built in 1929 and at the time it was erected a first mortgage bond issue was floated in the amount of $105,000. The bonds bore interest at six percent before maturity and six and a half percent thereafter. All obligations under the mortgage, including payments of principal and interest, were made up to March 15, 1932. The issue went into default as to principal on March 15, 1932, and as to interest on March 15, 1933. At the date of the last hearing the balance of the principal due on the mortgage was $102,083.22. There are no other liens against the real estate.

This bond issue was sold to the public by James I. D. Straus, either directly or through corporations controlled by him, and he was named as trustee under the bond issue. Mr. Straus was formerly a resident of the city of Detroit, but he is no longer a resident of the state of Michigan. Mr. George E. Brand acted as attorney for Mr. Straus at the time that the mortgage was executed and the bonds sold and has continued to act as his attorney up to this date.

The mortgage contained provision for the assignment of rents, in accordance with the provisions of Act 228, Public Acts of Michigan for 1925, being sections 13498 and 13499 of the Compiled Laws of 1929. On February 9, 1934, the issue was declared due and payable and proceedings to foreclose the mortgage were commenced. On commencement of the foreclosure proceedings, the Court enjoined the further use of the income from the Wilton Apartments for purposes other than the operating expenses, taxes, insurance and other purposes of the bond issue, and the trustee, under the trust indenture, has been collecting the income from the debtor in accordance with said injunction.

The same bondholders' committee, consisting of Harry M. Seldon, R. J. Lambrecht, J. H. Moeller, and Eli A. Wolff, which undertook to act on behalf of the bondholders for all of the issues, handled by James I. D. Straus and his associates, also undertook to look after the interest of the bondholders of this issue.

Since this petition was filed, through the agreement of the parties and approval of the Court, $15,064.59 has been distributed to the bondholders as interest payments and on April 21, 1938, the trustee had on hand $11,419.26.

Since the apartment house was purchased by the Wilton Realty Corporation it has been operated by Alfred Meyers. Mr. Meyers is one of the original mortgagors and owns stock in the present debtor corporation. Apparently the management has been good and the operation of the apartment house has been successful.

As of April 20, 1938, there was due on the mortgage for principal and interest $126,405.06. Taxes and other charges against the operation of the apartment house have been paid in full up to date, with the exception of current operating expenses, which are being paid out of current operating revenue.

While the debtor corporation is controlled by the Meyers family, Alfred Meyers has been allowed no management fee since he has been in charge of the apartment house.

The net income for 1936 was $9,971.04 and for 1937 was $8,809.74, without making provision for payment of interest on the mortgage or any provision for depreciation.

From the record, it does not appear that this income could at this time be materially increased, but there is no reason why the net income should not remain substantially at this level.

The total value of the apartment house, land and building, is approximately $82,000. The debtor corporation is insolvent at this time and the stockholders have made no offer to make any added contribution of capital. There is no equity for stockholders. The plan submitted provides in part for:

1. The extension of the maturity date of $85,500 of bonds and accrued interest thereon, to March 15, 1947.

2. The outright cancellation of $16,000 of bonds and interest accrued thereon and the execution of a second mortgage securing the same to be subordinate to the first trust and chattel mortgages, and not to mature prior to March 15, 1947, and to bear interest not to exceed six percent.

3. The reduction in the interest rate from six percent to four percent for three years, four and a half percent for the next three years, five percent for the remaining four years.

4. The outright cancellation of approximately $11,000 in past due interest and the payment of the balance of the past due in-

terest in cash on the date the plan is approved.

5. Debtor corporation to continue to operate the apartment house so long as it is not in default on any of the obligations assumed by it.

6. The appointment of the Equitable Trust Company, a Michigan corporation to act as trustee under the new mortgage.

7. The debtor is to give a chattel mortgage covering all furniture, furnishings and equipment in the apartment house as additional security.

8. The provision in the present mortgage for the assignment of rents to be continued.

9. The debtor's liability on the extended bonds, coupons, and trust indentures will continue.

10. The expenses of reorganization will be paid out of the bondholders' funds now in the hands of the trustee under the mortgage.

The plan as proposed by the debtor corporation was submitted to the Public Trust Commission of the state of Michigan, a Commission created for the purpose of protecting the interest of bondholders, and the Commission entered an order approving "in outline" the proposed plan. The Commission was represented in this Court by its attorney, who expressed a desire to have the matter resubmitted to that Commission for the purpose of further consideration. However, in a similar reorganization plan this Commission attempted to reopen hearings, and withdraw its approval of the plan, and interested parties were successful in securing a State Court injunction restraining this Commission from taking any further action. It is apparent that the Commission was not sufficiently advised of the true situation at the time of the original approval, and the subsequent developments caused it to desire to withdraw its approval.

A copy of the bill of complaint filed in the State Court, together with a copy of the restraining order issued by the State Court, has been filed in this Court in the matter of the petition of Mara Villa Real Estate Company, Number 22,265. That case is substantially the same as this and involves substantially the same kind of a bond issue.

During the time that this injunction is in effect and the constitutionality of the act under which the State Commission is operating is in question, it will be impossible for the Commission to act.

The plan as approved by the debtor corporation was approved by the bondholders' committee and submitted to the bondholders with a letter of transmittal signed jointly by the corporation and the bondholders' committee which read in part as follows: "Believing that the plan is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, we urge your serious consideration and early acceptance of it."

This letter was signed also by the attorneys for the debtor and attorneys for the committee and the attorney for the bond issue trustee.

The plan, together with the letter of transmittal, covers nine pages of closely written matter, and it would be difficult for a person not trained in the construction of legal documents to understand its affect. Bondholders would be justified in following its recommendations as contained in the letter, and this undoubtedly caused many bondholders to approve the plan without fully understanding it.

The revised bankruptcy law provides that the court may ask for the assistance of the Securities and Exchange Commission in considering a reorganization of this character and in view of the fact that the Michigan Public Trust Commission is not in a position to act, it seems necessary to have the assistance of some such agency in order to insure the adequate protection of the bondholders.

■ Before granting its approval to a plan of reorganization, it is the duty of the District Court to find that the plan of reorganization proposed is fair, equitable and feasible, and the Court must scrutinize carefully plans for the reorganization of insolvent companies in order to be sure that assets belonging to creditors are not by indirection diverted to the stockholders. In re Matter of 620 Church Street Building Corp. et al., 299 U.S. 24, 57 S.Ct. 88, 81 L. Ed. 16; In re Day & Meyer, Murray & Young, 2 Cir., 93 F.2d 657; Price v. Spokane Silver & Lead Company et al., 8 Cir., 97 F.2d 237.

■ The plan proposed in these proceedings is not fair, equitable nor feasible, and it directly diverts to the stockholders assets belonging to the bondholders.

The bondholders now have the control of all the assets of the corporation, or the legal right to such immediate control. The proposed plan would deprive them of this valuable property right, and in this respect is unfair, inequitable and discriminatory.

The proponents of the plan made no showing that would justify a belief that the common stock has any value, present or future, and Section 77B cannot be used to aid stockholders at the expense of bondholders. To justify retention of stock interest by debtor's stockholders, it must appear that they have furnished some compensatory additional consideration, or have an equity in the estate of the debtor after the rights of the creditors have been sufficiently provided for. Sophian v. Congress Realty Company, 8 Cir., 98 F.2d 499; In re Barclay Park Corporation, 2 Cir., 90 F.2d 595; In re Center Court Apartments, D.C., 23 F.Supp. 407.

The debtor corporation has no interest in the property other than that which it acquired by the expenditure of the $10,000 original investment. At the time this purchase was made, it had, or could have had, complete knowledge as to the outstanding obligations.

Among other reasons, the plan is unfair and inequitable for the following:

(1) It immediately transfers to the benefit of the debtor corporation all cash on hand not used to pay the expenses of reorganization; whereas the bondholders should be paid this cash on hand at once.

(2) Because the entire cost of the reorganization is to be met by the bondholders.

(3) Because the interest rate of four percent is unreasonably low.

(4) Because the extension of the payment of the principal of the mortgage for ten years is unreasonably long.

(5) Because the entire control of the property is left in the hands of the insolvent debtor corporation.

(6) Because the plan provides for the cancellation of approximately $11,000 of the debtor's obligations.

(7) Because the stockholders of the debtor corporation entirely avoid any personal responsibility for the success of the plan.

(8) Because the plan postpones the time that action may be brought against the original mortgagors to enforce their personal responsibility under the mortgage, without any consideration therefor passing from said mortgagors to the bondholders.

In view of the fact that the Michigan Public Trust Commission and the Bondholders Protective Committee are restrained from taking any action for the protection of the bondholders in these proceedings, and in view of the fact that it is apparent that the stockholders of the debtor corporation have no desire to furnish any additional capital, a revised plan will have to be submitted in some other manner.

Therefore, an order has been entered in these proceedings, requesting the Securities and Exchange Commission to appear herein, and making Section 208, Article IX, Chapter X, of the revised Bankruptcy Act, 11 U.S.C.A. § 608, applicable to these proceedings.

An order may also be entered appointing Paul E. Weadock as Examiner, and making Sections 168 and 170, Article VII, Chapter X, 11 U.S.C.A. §§ 568, 570, of the revised Bankruptcy Act, applicable to these proceedings.

Further proceedings may be continued until Monday, January 16, 1939, for the purpose of permitting the debtor to propose amendments which will remove the objections to the present plan.

Any creditor or the indenture trustee is likewise authorized to submit a plan at any time prior to such date, in accordance with Subdivision (2) of Section 170, Chapter X, Article VII, of the revised Bankruptcy Act.

The Examiner is likewise directed to present a plan on that date, either independently or in cooperation with any or all of the interested parties.