**METROPOLITAN HOLDING CO. et al. v. WEADOCK et al.**

Nos. 8226, 8227.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1940.

SIMONS, Circuit Judge, dissenting.

Jason L. Honigman and George E. Brand, both of Detroit, Mich. (Milton J. Miller, of Detroit, Mich., on the brief), for appellants Metropolitan Holding Co. and others.

Paul Weadock, of Detroit, Mich., in pro. per.

Joseph J. Marshall, of Detroit, Mich., for appellee Paul Weadock.

Chester T. Lane, Gen. Counsel, and Martin Riger, both of Washington, D. C., Louis S. Peirce, of Cleveland, Ohio, and Wm. L. Cary, of Washington, D. C., for appellee Securities and Exchange Commission.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

On March 25, 1937, Metropolitan Holding Company, a Michigan corporation (herein called the debtor), filed a voluntary petition for reorganization under 77B of the Bankruptcy Act, as amended, 11 U. S.C.A. § 207. Its sole asset was a two-story commercial building in Detroit. The building had five stores on the ground floor and a ballroom above. It was constructed by the debtor in 1929 with $83,600 of its own funds, all of its capital, and the proceeds of a $300,000 first mortgage executed July 1, 1929, in which James I. D. Straus was named as trustee.

The debtor was insolvent. It owed the whole $300,000 derived from the bond issue and the interest which had accrued since July 1, 1931, or more than $420,000 altogether. When the petition was filed, the building, on the basis of reconstruction, less depreciation, was worth $239,400. The land was worth $84,700 but upon an income basis the whole property was appraised at $175,000.

The court approved the petition and continued the debtor in possession, subject to the right of Straus, as trustee under the mortgage, to collect and receive the income and profits from the property.

The debtor filed its proposed plan of reorganization. The trustee intervened. The court appointed an examiner and at the request of the court the Securities and Exchange Commission entered its appearance. The court filed its findings of fact and conclusions of law and on December 28, 1938, entered an order disapproving the plan upon the ground that it was illegal, unfair, inequitable and not feasible. This order also included a finding that the debtor was insolvent and one of the conclusions of law is in substance that the plan diverts assets from the bondholders to the stockholders of the debtor.

The debtor, and Straus, trustee, appealed from the orders appointing an examiner and requesting the intervention of the Securities and Exchange Commission. In view of the opinion of this court in Wilton Realty Corporation et al. v. Weadock et al., 6 Cir., 106 F.2d 1022, this appeal is not pressed and is hereby dismissed. But the same parties appealed from the order disapproving the plan and the question for determination is whether this order was correct.

The plan is somewhat involved but we think it necessary to consider only certain principal features thereof. It was to become effective on October 1, 1937. The time for the payment of the $300,000 secured by the mortgage was to be extended to January 1, 1946. The interest rate was to be reduced from 6% to 3% for the extended period and past-due interest in excess of 2% from January 1, 1931, to January 1, 1936, was to be cancelled.

We think the plan runs afoul of Case et al. v. Los Angeles Lumber Products Co. Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, decided November 6, 1939. The Los Angeles case recognized and affirmed the "familiar rule" that in reorganization plans the interest of the stockholder is subordinate to the rights of secured and unsecured creditors and the "fixed principle" that creditors are entitled to priority over stockholders against all the property of an insolvent corporation to the extent of their debts. According to the plan, the bondholders gave up one-half of their contractual rate of interest for the extended period and forgave 4% of the interest already earned and unpaid. Thus, to this extent, the property is relieved of its incumbrance.

But the plan provides that "no rights of stockholders are to be affected by said plan." This means of course that the stockholders, who on account of the clear insolvency of the debtor, had no equity in its estate, are not only to be retained but are to enjoy whatever prospective or potential value the stock may have by reason of the plan. See Northern Pacific Ry. v. Boyd, 228 U.S. 482, 508, 33 S.Ct. 554, 57 L.Ed. 931. This is a discrimination in favor of stockholders which 77B, sub. f does not tolerate. See In re Barclay Park Corp., 2 Cir., 90 F.2d 595. In such a case before a stockholder can retain his stock he must contribute the reasonable equivalent in money or money's worth of the participation accorded him but the stockholders propose to make no such contribution either in money, or, in view of the Los Angeles case, in money's worth. The debtor and the trustee recognize the principle of the Los Angeles case but say that the provision whereby the debtor will remain in possession and enjoy the skill and experience of the stockholders in the management and operation of the property, is in effect a contribution by the stockholders, indirectly of course, of money's worth. But the obstacle to this contention is that it is in the face of the Los Angeles case.

We do not forget that the plan has had the approval not only of the Public Trust Commission of Michigan but of the requisite percentage of the bondholders, but, as specifically held in the Los Angeles case, supra, 308 U.S. page 114, 60 S.Ct. 7, 84 L.Ed. 110, this is not a test of fairness.

The order appealed from is affirmed.

SIMONS, Circuit Judge (dissenting).

I am unable to agree that the decision of the majority is compelled by the holding of the Supreme Court in Case et al. v. Los Angeles Lbr. Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110. In that case the plan proposed to permit stockholders to share in the assets of the corporation pledged as security for creditors. Here the priority of the bondholders is preserved for their protection, if not to the full extent of the contractual obligation, certainly to the full extent of the fair value of the security. Nor is there support for the announced conclusion in the case of In re Barclay Park Corp., 2 Cir., 90 F. 2d 595, where the plan likewise proposed to permit stockholders to share in assets pledged as security for the debts of the corporation.

The underlying philosophy of all of the reorganization provisions of the Bankruptcy Act, including its agricultural adjustment provisions and the railroad and corporation reorganization sections, is that a distressed debtor should have an opportunity for rehabilitation, and that there is no inequity nor constitutional infirmity in providing such opportunity so long as creditors are protected in their priorities to the full fair value of their security at the time of the reorganization, and chose to preserve such value rather than hazard a distress sale. Unless this concept is grasped the reorganization provisions would seem to have no purpose that is not served by liquidation under usual bankruptcy procedure.

While the court is not bound by the consent of the bondholders, nor by the approval of the plan by state or federal commissions, the self-interest that induces the former and the opportunity for detailed investigation that leads to the latter, make them highly persuasive of the fair and equitable character of the plan. I think it should be approved and the order appealed from reversed.