## HIGHLAND TOWERS CO. et al. v. BOND-HOLDERS' PROTECTIVE COMMITTEE OF HIGHLAND TOWERS et al.

### No. 8280.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1940.

As Amended on Denial of Rehearing Nov. 13, 1940.

Seymour J. Frank and George E. Brand, both of Detroit, Mich., for appellant Highland Towers Co. and others.

Irving H. Small, of Detroit, Mich., for appellee Michigan Public Trust Commission.

Chester T. Lane, Gen. Counsel, Samuel H. Levy, and Raoul Berger, all of Washington, D. C., Louis S. Peirce, of Cleveland, Ohio, and Ben S. Warren, Jr., of Chicago, Ill., for appellee Securities and Exchange Commission.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

On March 30, 1937, The Highland Towers Company, a Michigan corporation (herein called the debtor), filed a petition for reorganization under Sec. 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207. The debtor's principal asset was a

four-story apartment and store building in Highland Park, Michigan. The structure, containing 137 apartments and 10 stores, was completed in 1929 by Harry Dunitz, Max Dunitz and Joseph Bornstein and their wives upon land which they owned. Construction was financed largely from an issue of $700,000 first mortgage serial gold bonds secured by a first mortgage executed February 25, 1929, to Central Trust Company (now Equitable Trust Company), trustee, the latter being an intervenor and appellant herein. The bonds bore 6% interest (6½% after maturity) and were due serially February 15, 1932, to and including February 15, 1941. The premises changed hands several times, including one conveyance originating in the foreclosure of a second mortgage; and in 1931 when the then owner failed to pay tax and sinking fund deposits, the trustee went into equity and obtained a decree upholding his right to collect the income and possess and operate the building while the mortgage was in default. This assignment to the trustee was authorized under Act 228, Public Acts of Michigan 1925, by virtue of a provision to that effect in the trust indenture.

In 1935 the premises were conveyed to Eileen Ellis, a nominee of Harry Dunitz. On December 15, 1935, she conveyed to the newly-created Highland Towers Company (the debtor) of which she and one Jacobson were the stockholders. Dunitz negotiated both transactions. In the first he paid the grantor $18,000 borrowed from Jacobson and conveyed a lot valued at $5,000. After the conveyance to debtor it was understood that the Ellis stock would be transferred to Dunitz when he repaid Jacobson. Dunitz testified that he came back into Highland Towers under compulsion since he and some of his associates were obligated upon the bond issue and the property was not being operated to produce the maximum revenue.

In the series of conveyances the debtor was the only grantee which assumed the trust mortgage.

As of December 1, 1935, with the consent of the original owners, the then owner and the trustee, Harry Dunitz, and Standard Management Company, Inc., were made managers and operators of the property under an arrangement whereby the net income was to be delivered to the trustee for the purpose of the mortgage. There was testimony tending to show that the net revenue was increased by about $20,000 the first year under this management, for which compensation of 5% of the gross income was allowed.

At the time the petition for reorganization was filed the debtor had outstanding $693,000 face amount of first mortgage bonds. Interest amounting to about $300,000 was unpaid from August 15, 1931. Cash in the possession of a trustee in July, 1937, was $87,048.38 and in February, 1939, was $101,533.25. Two appraisals were made of the property and its fair market value, representing a capitalization of its demonstrated earning capacity, was placed at $425,000 by one appraiser and at $475,000 by the other. The court adopted the lower valuation. As of February 9, 1939, the debtor had an outstanding liability of $1,042,646.39 as against estimated assets of $526,533.25. The debtor was concededly insolvent and the court so found.

A suit instituted in the Circuit Court for Wayne County, Michigan, to enforce the personal obligation of the mortgagors has been pending since April 23, 1936.

The plan of reorganization was developed by the debtor in conjunction with the Bondholders' Committee and the trustee and was tentatively approved by the Michigan Public Trust Commission. Its principal features were: The extension of the maturity of the bonds to February 15, 1946; the reduction of the interest rate to 3% for the first six years of the extended maturity, and to 4% thereafter to maturity; the cancellation of all past-due interest above 2% and the 2% to be paid in cash with the exception of certain sums "frozen" in the liquidation proceedings of the original trustee. A small amount of the net income was to be set aside as working capital, otherwise all net income would be devoted to retirement of bonds, the debtor being required to retire a minimum of $15,000 face amount thereof during each of the first four years of the extended maturity and $20,000 face amount during each succeeding year. The debtor agreed to surrender $6,000 of the bonds reducing the amount of outstanding bonds to $687,000 and to give a chattel mortgage upon furniture and equipment as additional security. The debtor agreed to assume liability on the extended bonds without releasing the liability of the original mortgagors. No rights of stockholders were to be changed. The debtor was to remain in control and Dunitz and the Standard Management Company were to continue as managers, subject to the ap-

proval of the trustee. Bondholders, holding 82.823% of the bonds, accepted the plan. The court filed its findings of fact and conclusions of law and entered an order disapproving it.

The court found that the plan was not fair, equitable and feasible and diverted assets belonging to bondholders; that it would deprive bondholders of the valuable legal right which they had to immediate control of the assets of the debtor. The court said: "To justify retention of stock interests by Debtor's stockholders, it must appear that they have furnished some compensatory, additional consideration or have an equity in the estate of the Debtor after the rights of the creditors have been sufficiently provided for."

■■■ We think that the order disapproving the plan should be affirmed upon the authority of Case et al. v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, decided November 6, 1939. See, also, In re Barclay Park Corp., 2 Cir., 90 F.2d 595; In re Day & Meyer, Murray & Young, Inc., 2 Cir., 93 F.2d 657; In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 105 F.2d 357; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237, 245.

The case in most of its essential features is similar to Metropolitan Holding Co. et al. v. Weadock et al., 6 Cir., 113 F.2d 207 and Whitmore Plaza Corp. et al. v. Smith et al., 6 Cir., 113 F.2d 210, this day decided.

The debtor was clearly insolvent. It is true there was no scaling down of the face value of the bonds under the plan but there was a tremendous sacrifice by the bondholders of earned interest and of their contractual right to future interest. There was no contribution by the stockholders in money or money's worth in the sense expounded in the Case decision, supra. And apart from that decision, Dunitz's participation in the management of the property, however efficient it might have been, was not a contribution by a stockholder, since by the very terms of the plan which is before us on this appeal, he is not shown to be a stockholder.

The debtor being hopelessly insolvent, it follows of course that the bondholders were entitled to absolute priority over stockholders against all its property and the stockholders had no equity to be protected (In re 620 Church Street Corp., 299 U.S. 24, 27, 57 S.Ct. 88, 81 L.Ed. 16) and yet the proposed plan, if approved, secured to the stockholders the valuable legal right of management and voting control, and, as pointed out in the Metropolitan Holding Company case this day decided, the right to enjoy the prospective and potential value of their stock.

■■■ The Securities and Exchange Commission, appellee, intervened in the proceedings at the request of the court. Sec. 276, sub. c (2) of Art. XVI, Ch. X of the Chandler Act, 11 U.S.C.A. § 676, sub. c (2). The debtor then opposed, and here opposes, this intervention.

We have held in Whitmore Plaza Corporation et al. v. Smith et al., 6 Cir., 113 F.2d 210, this day decided, that there was no reversible error in allowing the Securities and Exchange Commission to become a party. After the court rejected the plan the Securities and Exchange Commission suggested certain cancellation of bonds; whereupon the debtor, without waiving its right to exception and review of the denial of confirmation of the original plan, proposed a modification whereby the stockholders would contribute $70,000 of bonds, plus unpaid accrued interest thereon, for outright cancellation, and would give the trustee the option to buy $38,000 additional bonds from an agent of Dunitz for 50% of their par value, without interest. The court made no minute entry either approving or disapproving the plan as thus modified. With reference thereto it said: "Mr. Warren, I have given your suggestion further consideration, and find that I cannot go along with you. * * *"

We gather from this statement that it did not approve the plan as amended, but the record is so indefinite that we do not feel called upon to determine whether the amended or modified plan was fair, equitable and feasible. We think the logical procedure is to have the District Court pass upon this question after consideration of the many elements involved, not the least of which is (1) whether the plan as so modified would still leave the debtor insolvent with no equity in the stockholders to be protected; and (2) whether the bondholders may compel Harry Dunitz to satisfy their claims upon his recognized obligation thereon.

And if Dunitz is able to, and does, discharge this obligation, then it becomes material to inquire whether, notwithstanding the statements in the plan to the con-

trary, he is in fact a stockholder. Dunitz testified as follows:

"Q. Who are the stockholders of the Highland Towers Company so far as you know today? A. Harry Jacobson and Eileen Ellis.

"Q. Is Eileen Ellis holding half of the stock until such time as you have paid back all of the money to entitled (sic) you to receive a certificate? A. That is correct.

"Q. Yes, by arrangement between you and Harry Jacobson? A. Yes, sir.

"Q. Did you come back into this Highland Towers Building as a matter of choice or for some other reason? A. As a matter of force.

"Q. Because you and your brother and Mr. Bornstein were obligated upon the bond issue? A. That is correct."

This testimony justifies the inquiry in order properly to determine whether there is any need for reorganization of the debtor. See In re South State Street Bldg. Corp., 7 Cir., 105 F.2d 680.

The order appealed from is affirmed and the case is remanded to the District Court for proceedings consistent herewith.

SIMONS, Circuit Judge (dissenting).

As in the case of Metropolitan Holding Co. v. Weadock, 6 Cir., 113 F.2d 207, this day decided, I am unable to agree that decision is compelled by Case et al. v. Los Angeles Lumber Products Co., Ltd., 308 U. S. 106, 60 S.Ct. 1, 84 L.Ed. 110, or persuaded by In re Barclay Park Corp., 2 Cir. 90 F. 2d 595, and as in Whitmore Plaza Corp. et al. v. Smith et al., 6 Cir., 113 F.2d 210, likewise this day decided, I am unable to see any good reason why this court should not consider proposed amendments to the reorganization plan in order to determine whether it is fair and equitable. Logical procedure undoubtedly recommends original consideration of amendments by the District Court, but there has now been such regrettable delay leading to a writ of mandamus by this court to compel decision in this series of cases, that there should be no further temporizing. .

It seems to me that the adequacy of a contribution by stockholders is to be judged not by what security holders surrender of the contractual obligation, but by what, if anything, they surrender of actual fair value at the time of the reorganization. If the forgiving of past-due interest which will never be collected, and if the reduction of future interest renders a reorganization plan unfair and inequitable, and if the security holders are deprived of assets by a continued voting control and management in the debtor, then I have no doubt that many of the reorganizations now hopefully functioning in the district of the adjudication have been improvidently approved.