In re **SOUTH AIKEN, LTD.**, Debtor.

**Bankruptcy No. 89–2974PGH.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 7, 1990.

§ 1107 of the Code makes § 365 applicable to debtors-in-possession.

George M. Cheever, and Daniel J. Sponseller, Pittsburgh, Pa., for John Alden Life Ins. Co.

C. Andrew McGhee, Pittsburgh, Pa., for debtor.

William H. Mendlow, and Sharon M. O'Neill, Pittsburgh, Pa., for Urban Redevelopment Authority of Pittsburgh.

. C. Robert McCall, Pittsburgh, Pa., for Developments, Inc.

Gary P. Nelson, Pittsburgh, Pa., for Shadyside Hosp.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

South Aiken, Ltd. ("Debtor") filed a petition under Chapter 11 of the Bankruptcy Code on November 6, 1989. Presently before the court are two competing plans of reorganization, one by the Debtor and one by John Alden Life Insurance Company ("Alden"). Alden is the first mortgage holder on the Debtor's sole asset, an office building known as Shadyside Place (the "Premises").

Alden's plan calls for an immediate sale of the Premises to Developments, Inc. for a cash sum of $3,650,000. The Debtor's plan is also a liquidating plan; however, it proposes to market the Premises for up to two years in the hope of obtaining a higher offer.

Both Alden and the Debtor have filed objections and voted against the other's plan. The Urban Redevelopment Authority of Pittsburgh ("URA"), the holder of a second mortgage against the Premises, has filed an objection and voted against Alden's plan. The general unsecured creditors cast one ballot which accepts the Alden plan. Each plan proponent requests confirmation of its plan under the "cramdown" provisions of § 1129(b). 11 U.S.C. § 1129(b).

### Nature of Objections

The major objection to Alden's plan set forth by both the Debtor and the URA is that the value of the Premises is in excess of $4,700,000 and therefore, the proposed sale for $3,650,000 under Alden's plan improperly impairs the URA's interest.

Alden proposes to pay unsecured creditors whose individual claims are under $20,000 100% of the face amount of their claims. The URA asserts that Alden's plan unfairly discriminates against the URA in favor of the general unsecured claimants since the URA's claim exceeds $20,000 and the URA would receive less than 100% of its claim.

Alden asserts that the Debtor's plan is not feasible and that the Debtor's plan unfairly discriminates against Alden and the general unsecured creditors.

### Discussion

Alden holds a first mortgage on the Premises with a balance in excess of

$4,400,000. The URA holds a second mortgage with a balance in excess of $900,000.

The Alden plan proposes to sell the Premises to Developments, Inc. for $3,650,000, with the sale proceeds to be applied to Alden's mortgage. The URA and the Debtor assert that the value of the Premises exceeds $4,700,000 and therefore, the Debtor's plan should be confirmed allowing the Debtor two years to find a higher offer and provide a recovery to the URA on its second mortgage.

The value asserted by the URA and the Debtor finds no support from the testimony of two appraisers at trial. The appraiser presented by the URA and the Debtor stated that his expert opinion of the value of the Premises was $4,000,000. Although he appeared somewhat confused as to how the $4,000,000 figure was derived, he repeatedly stated his opinion that the value of the Premises was $4,000,000. The appraiser presented by Alden valued the Premises at $3,500,000.

The General Partner of the Debtor testified as to his belief that the value of the Premises was $5,200,000.

The Debtor has had nearly a year since the filing of its bankruptcy petition to market the Premises. Alden has made a vigorous effort to market the Premises and has obtained various offers, the highest of which is $3,650,000.

We believe the value of the Premises is fairly stated by the offer tendered by Developments, Inc. in the amount of $3,650,000. By accepting the offer of $3,650,000 and proposing a plan of reorganization, Alden suffers a substantial loss on its secured claim. Alden is further providing the funds for distribution to unsecured creditors. Thus, it is clear that Alden believes the offer of $3,650,000 is fair and equitable.

The Debtor's plan is premised upon the assumption that the Premises are worth more than Alden's debt. Any value in excess of Alden's debt is clearly non-existent. The value of the Premises falls far short of Alden's debt and there is no possibility of the value exceeding Alden's debt in the future that would provide the URA any recovery.

The Debtor's plan does nothing more than hold the case in abeyance and prevent relief from stay by Alden for an undetermined period of time for up to two years with the hope of obtaining a sale of the Premises for an amount which might provide some recovery to the URA. In view of our finding as to the value of the Premises, the Debtor's plan is not feasible.

The URA's assertion that Alden's plan is discriminatory because unsecured trade creditors with claims in amounts less than $20,000 are paid a greater percentage than the URA will receive, is not well taken. Bankruptcy Code § 1122(b) provides that "[a] plan may designate a separate class of claims consisting of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." We find that the amount set by Alden, $20,000, is reasonable.

Alden's plan of reorganization will be confirmed. Confirmation of the Debtor's plan will be denied.

An appropriate order will be entered.