**In re CREEKSIDE LANDING, LTD., Debtor.**

**Bankruptcy No. 390–03614.**

United States Bankruptcy Court, M.D. Tennessee.

April 30, 1992.

See also 116 B.R. 106.

I.

The debtor is a limited partnership that owns and operates Creekside Landing Apartments in Memphis, Tennessee. The debtor's general partner is Beuerlein, Wunderlich and Company. Beuerlein, Wunderlich and Company is a general partnership whose general partners are Walter Wunderlich, Jr. and James Beuerlein. The apartment complex is managed by Dennison Management Co., Inc. Dennison is owned by James Beuerlein and Walter Wunderlich, Jr.

In 1988, the apartment complex was refinanced with a nonrecourse mortgage in favor of Gibraltar Savings. The Resolution Trust Corporation is conservator for Gibraltar Savings.

The debtor filed Chapter 11 on April 24, 1990. After a hearing, the value of the apartment complex was determined to be $4,320,000. The RTC's claim is $5,150,-417.27. The debtor's first plan was denied confirmation in April, 1991.

This amended plan creates four classes of non-priority, unsecured claims:

*CLASS 6* contains the RTC's unsecured deficiency of approximately $830,000. The plan proposes to pay 20% on the effective date of the plan in full satisfaction of the Class 6 claim.

*CLASS 7A* contains 69 trade claims totalling approximately $35,000 and the claims of Dominion Bank and Security Federal Savings and Loan. The Class 7A trade claims are to be paid 75% on the effective date of the plan. Security Federal has a "disputed" $600,000 claim. Beuerlein and Wunderlich are personally liable to Security Federal. Security Federal has agreed to accept $58,000 on the effective date of the plan in full satisfaction of its claim and to release the personal liability of Beuerlein and Wunderlich. Dominion Bank has a claim of approximately $323,000. This claim is partially secured by "pledge notes" or "contribution notes" from the debtor's limited partners and is guaranteed by James Beuerlein and Walter Wunderlich. The

G. Rhea Bucy, Thomas H. Forrester, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for debtor.

John L. Ryder, Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for Resolution Trust Corp.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

Confirmation of this Chapter 11 plan is denied because the amended plan unfairly discriminates against the unsecured claim of the Resolution Trust Corporation and violates the absolute priority rule. The following constitute findings of fact and conclusions of law. Bankr.R. 7052.

plan proposes to allow Dominion to collect the notes held as collateral. Dominion would be left with an unsecured claim of approximately $250,000. Dominion has agreed to accept $100,000 on the effective date of the plan in full satisfaction of this claim.

*CLASS 7B* contains four insiders with claims totalling approximately $19,420. The plan proposes to pay 20% of the Class 7B claims on the effective date.

*CLASS 8* contains the $80,000 claim of James Beuerlein and Associates (a sole proprietorship) and the $333,000 claim of Beuerlein, Wunderlich and Company. The plan proposes to pay 5% of the Class 8 claims on the effective date.

The plan calls for contribution of "new capital" of $250,000. Fifteen new limited partnership interests will be sold for $237,-500. Existing limited partners can purchase new interests for $15,833.33 each. Partners who fail to purchase new units will retain no interest in the debtor. If an existing limited partner declines to reinvest, the general partner can designate any entity to purchase the nonsubscribed new units. The general partner can acquire a five percent interest in the reorganized debtor for $12,500. Sixty percent of the "new capital," or $150,000, must be contributed in cash on the effective date of the plan. The remainder may be deferred to the first anniversary of the effective date if the purchaser secures the balance with an irrevocable letter of credit acceptable to the general partner.

The RTC opposes confirmation, arguing that the separate classification of its deficiency claim is improper, that the plan unfairly discriminates against the RTC, and that the plan is not fair and equitable because it fails the absolute priority rule.

## II.

■ Classification of unsecured claims is measured by a flexible standard in the Sixth Circuit. *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck)*, 800 F.2d 581, 586–87 (6th Cir.1986); *In re Aztec*, 107 B.R. 585, 587 (Bankr.M.D.Tenn.1989). *See also In re*

*Jersey City Medical Ctr.*, 817 F.2d 1055, 1061 (3rd Cir.1987); *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1313 (8th Cir.1987); *In re Mortgage Inv. Co. of El Paso*, 111 B.R. 604, 613 (Bankr.W.D.Tex. 1990). *But see Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 948 F.2d 134, 137–41 (5th Cir.1991), *vacated in part on reh'g per curiam* (1992). Although abuse of the voting process through "creative" classification is prohibited, separate classification of unsecured claims with dissimilar attributes or interests is allowed. *U.S. Truck*, 800 F.2d at 586–87. Evidence that the separately classified claim holder has "a different stake in the future viability of the reorganized company," has interests that differ substantially from those of other impaired creditors, or has other means for protecting its claim in the reorganization will support separate classification. *Id.* at 587.

■ For the reasons stated in *Aztec*, 107 B.R. at 587, the RTC's unsecured deficiency claim can be separately classified. The RTC could not pursue its deficiency against the debtor or its general partner outside of Chapter 11. The unsecured claim of the RTC exists only by operation of § 1111(b) and only in a Chapter 11 case. The RTC has a substantial "other interest" that is not shared by other unsecured claim holders: it has every incentive to vote its large unsecured deficiency claim to affect the treatment of its *secured* claim by defeating confirmation of any plan. *Id.* at 587.

## III.

■ That the debtor may separately classify the unsecured deficiency claim of the RTC does not resolve whether the plan unfairly discriminates against the RTC's claim. *Aztec*, 107 B.R. at 587. Section 1129(b)(1) prohibits unfair discrimination against an impaired dissenting class of claims. Discrimination against the RTC is not automatically "fair" simply because its claim exists only by operation of § 1111(b). *Aztec*, 107 B.R. at 592.

In *Aztec,* this court approved a four factor test for fairness of discrimination at cram down in Chapter 11 cases:

(1) Whether the discrimination is supported by a reasonable basis;

(2) Whether the debtor can confirm and consummate a plan without the discrimination;

(3) Whether the discrimination is proposed in good faith; and

(4) The treatment of the classes discriminated against.

*Id.* at 590. *See In re Mortgage Inv. Co. of El Paso,* 111 B.R. 604, 614–15 (Bankr. W.D.Tex.1990); *In re 11, 111, Inc.,* 117 B.R. 471, 478 (Bankr.D.Minn.1990); *In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr.S.D.N.Y.1990).

The debtor failed to demonstrate that it cannot confirm and consummate a plan without the proposed discrimination and the (unspoken) basis for this discrimination is *not* reasonable. The 75% payment to trade creditors and the $100,000 "settlement" with Dominion Bank unfairly discriminate against the RTC. There is no evidence that a 75% payment to the 69 trade creditors is necessary to protect relationships the debtor needs to reorganize. *Aztec,* 107 B.R. at 590; *Mortgage Inv. Co. of El Paso,* 111 B.R. at 615. There is no evidence that it would be "administratively inconvenient" to pay the trade creditors the same percentage to be paid to the RTC. *Cf. In re South Aiken, Ltd.,* 121 B.R. 7, 9 (Bankr.W.D.Pa.1990). The debtor offered no explanation why Dominion Bank will receive 40% of its $250,000 unsecured claim while the RTC is paid only 20% of its unsecured claim. Dominion Bank "settled" its $250,000 unsecured claim for an immediate payment of $100,000; however, consent by the debtor and a creditor to discrimination in favor of the creditor, especially where the principles of the debtor are personally liable to the creditor, reveals very little about the debtor's prospects to confirm and consummate a plan without the discrimination. After liquidation of the partners' notes, Dominion has an ordinary unsecured claim. "Level" payment of the RTC, the trade claims and Dominion's unsecured claim would pay approximately 26% of these claims.

■ The "unspoken" basis for discrimination in favor of the trade creditors and Dominion Bank is that Beuerlein and Wunderlich are personally liable to trade creditors and to Dominion Bank. Beuerlein and Wunderlich are not personally liable to the RTC. That the debtor's owners have personal liability to some unsecured creditors and not to others cannot alone satisfy the test for fairness of discrimination under § 1129(b)(1). *In re 222 Liberty Assocs.,* 108 B.R. 971, 991–93 (Bankr.E.D.Pa.1990). *But cf. Travelers Ins. Co. v. Bryson Properties XVIII (In re Bryson Properties XVIII),* 129 B.R. 440, 445 (M.D.N.C.1991), *rev'd,* 961 F.2d 496 (4th Cir.1992). The proposed discrimination primarily benefits the owners of the debtor with no corresponding benefit for general creditors. *Aztec,* 107 B.R. at 590.

## IV.

■ Whether a Chapter 11 plan is "fair and equitable" is a mixed question of fact and law which must be determined on a case-by-case basis. *Great Western Bank v. Sierra Woods Group,* 953 F.2d 1174 (9th Cir.1992). Section 1129(b)(2) states the minimum requirements of a fair and equitable plan. *Federal Sav. & Loan Ins. Corp. v. D & F Constr., Inc. (In re D & F Constr., Inc.),* 865 F.2d 673, 675 (5th Cir. 1989); *In re Apple Tree Partners, L.P.,* 131 B.R. 380, 395 (Bankr.W.D.Tenn.1991); *In re Outlook/Century,* 127 B.R. 650, 656 (Bankr.N.D.Cal.1991); *In re Triple R Holdings, L.P.,* 134 B.R. 382, 389 (Bankr. N.D.Cal.1991); *In re Pullman Constr. Ind., Inc.,* 107 B.R. 909, 939 (Bankr.N.D.Ill. 1989).

One element of the statutory "fair and equitable" test is the "absolute priority rule" in 11 U.S.C. § 1129(b)(2)(B)(ii): A plan cannot be confirmed over the objection of a class of impaired unsecured claim holders that do not receive payment in full if a junior class of claims or interests receives or retains any property under the plan "on account of such junior claim or interest."

Citing *In re U.S. Truck Co.*, 800 F.2d 581 (6th Cir.1986), the debtor argues that the amended plan satisfies the "new value exception" to the absolute priority rule. The "new value exception" permits existing interest holders to own and control a reorganized business without paying impaired senior classes in full. Although the interest holders may not retain ownership "on account of" pre-bankruptcy ownership rights, existing owners may exchange "new value" to acquire ownership and control of the reorganized debtor. The new value "exception" is thus really an "exclusion" from application of the absolute priority rule.

This circuit has aggressively embraced the "new value exception" to the absolute priority rule. In *U.S. Truck*, for a modest new investment of $100,000, the pre-bankruptcy owners of a trucking company "reacquired" ownership of a business reporting monthly profits in excess of $100,000. 800 F.2d at 588. This favorable inclination to the "new value exception" is evidenced in Sixth Circuit cases prior to *U.S. Truck*. *See In re Van Sweringen Corp.*, 155 F.2d 1009 (6th Cir.), *cert. denied sub nom. Cleveland Hotel Protective Comm. v. Nat'l Bank of Cleveland*, 329 U.S. 766, 67 S.Ct. 122, 91 L.Ed. 659 (1946); *Metropolitan Holding Co. v. Weadock*, 113 F.2d 207 (6th Cir.1940); *Whitmore Plaza Corp. v. Smith*, 113 F.2d 210 (6th Cir.1940); *In re Wilton Realty Corp.*, 106 F.2d 1022 (6th Cir.1939), *cert. denied*, 308 U.S. 626, 60 S.Ct. 386, 84 L.Ed. 523 (1940), *aff'g per curiam* 30 F.Supp. 486 (E.D.Mich.1938).

■ To satisfy the "new value exception," the contribution of new value must be substantial and essential. *U.S. Truck*, 800 F.2d at 588. The debtor probably has to prove that it cannot reorganize without new capital. Some courts have said that reorganization must be impossible without the new contribution. *In re Jartran Inc.*, 44 B.R. 331, 379 (Bankr.N.D.Ill.1984). *See also In re Potter Material Serv., Inc.*, 781 F.2d 99, 102 (7th Cir.1986). It has been held that the new money must be unavailable from any other source or that the old equity holders must be the most feasible

source. *See In re Jartran*, 44 B.R. at 379. *See also Potter Material Serv.*, 781 F.2d at 102.

■ To be substantial, new value must be a present contribution rather than a promise to pay in the future; it must be freely tradeable in the market by the debtor; and it must be an asset in the accounting sense. The contributor must be bearing a *new* economic risk—it is not enough that the contributor of "new" capital is simply continuing an existing risk, satisfying an existing risk, or only changing the form of an existing risk. Forgiveness of debt by itself is not sufficient. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 205–206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988) (experience, expertise, and promise of future labor not new value); *Metropolitan Holding Co. v. Weadock*, 113 F.2d 207, 209 (6th Cir.1940) ("the reasonable equivalent in money or money's worth"); *In re Van Sweringen Corp.*, 155 F.2d 1009, 1012–13 (6th Cir.), *cert. denied sub nom. Cleveland Hotel Protective Comm. v. Nat'l Bank of Cleveland*, 329 U.S. 766, 67 S.Ct. 122, 91 L.Ed. 659 (1946) ("a contribution in money or money's worth...."); *Whitmore Plaza Corp. v. Smith*, 113 F.2d 210, 211 (6th Cir.1940); *Kham and Nate's Shoes No. 2, Inc. v. First Bank*, 908 F.2d 1351, 1362 (7th Cir. 1990) (equity holders' guarantees of the debtor's debts are "intangible, inalienable, and unenforceable" and not substantial new value); *In re Yasparro*, 100 B.R. 91, 98 (Bankr.M.D.Fla.1989) (promissory notes not new value); *In re Future Energy Corp.*, 83 B.R. 470, 499 (Bankr.S.D.Ohio 1988) (promise to pay in future not new value); *In re Snyder*, 99 B.R. 885, 889–90 (Bankr.C.D.Ill.1989) (forgiveness of debt affects only liability side of balance sheet and fails as new value). The Seventh Circuit has held that promises "inadequate to support the issuance of shares under state law are also inadequate to support the issuance of shares by a bankruptcy judge over the protest of the creditors, the real owners of the firm." *Kham & Nate's Shoes*, 908 F.2d at 1362.

New value must be "reasonably equivalent" to what the contributor receives in exchange. *In re Van Sweringen Corp.*, 155 F.2d 1009, 1012 (6th Cir.), *cert. denied sub nom. Cleveland Hotel Protective Comm. v. Nat'l Bank of Cleveland*, 329 U.S. 766, 67 S.Ct. 122, 91 L.Ed. 659 (1946) ("reasonably equivalent in view of all of the circumstances"); *Metropolitan Holding Co. v. Weadock*, 113 F.2d 207, 209 (6th Cir.1940) ("the reasonable equivalent in money or money's worth of the participation accorded"); *Whitmore Plaza Corp. v. Smith*, 113 F.2d 210, 211 (6th Cir.1940); *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 121, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939); *In re Pullman Constr. Ind., Inc.*, 107 B.R. 909, 949 (Bankr.N.D.Ill. 1989); *In re Future Energy Corp.*, 83 B.R. 470, 499 (Bankr.S.D.Ohio 1988). Ownership has value independent of the market value of the debtor's assets. *Ahlers*, 485 U.S. at 207–208, 108 S.Ct. at 969 (rejecting argument that ownership of entity with no net worth and minimal going concern is worthless); *Pullman Constr.*, 107 B.R. at 949. Control and the right of management must be valued as consideration received by those who contribute new capital. Capitalization of future earnings is the starting point for calculation of the value received by the contributor. *Muskegon Motor Stockholders Protective Comm. v. Davis (In re Muskegon Motor Specialties)*, 366 F.2d 522 (6th Cir.1966) ("earning capacity, the capitalization of future profits, is the appropriate method of valuation"); *In re Frank Fehr Brewing Co.*, 268 F.2d 170 (6th Cir.1959), *cert. denied sub nom. Kremer v. Clarke*, 363 U.S. 817, 80 S.Ct. 1250, 4 L.Ed.2d 1157 (1960); *Future Energy*, 83 B.R. at 500. The likelihood of return on the new investment and probable future risks must be considered. *Ahlers*, 485 U.S. at 207–208, 108 S.Ct. at 969; *U.S. Truck*, 800 F.2d at 588. The likelihood of future increases in the value of assets also is relevant.

Benefits that are personal to an investor are a factor bearing on the value received by that investor. Dividends, distributions or even a future salary from the debtor appropriately are considered. That an interest holder will protect tax benefits or receive new tax benefits enhances the value of the investment to the interest holder. *Pullman Constr.*, 107 B.R. at 949. *But see In re Jartran*, 44 B.R. 331, 380–81 (Bankr.N.D.Ill.1984). Plan payments to creditors that release the investor from liability such as guaranties confer a benefit on the investor that must be valued. *Pullman Constr.*, 107 B.R. at 949–50.

The amount of debt discharged under the plan has been considered an element of the fairness of the exchange. *In re Snyder*, 105 B.R. 898, 901–902 (Bankr.C.D.Ill.1989); *Travelers Ins. Co. v. Olson (In re Olson)*, 80 B.R. 935, 937 (Bankr.C.D.Ill.1987); *Pullman Constr.*, 107 B.R. at 950 (rejecting a new value payment of $450,000 when the amount of debt discharged exceeded $12,-428,000). Other courts question this factor. *See, e.g., In re Yasparro*, 100 B.R. at 98, 99.

The presence of new investors also has been considered. *See In re Outlook/Century, Ltd.,* 127 B.R. 650, 654 (Bankr. N.D.Cal.1991) (rejecting purchase of interests in reorganized debtor by pre-petition equity holders because no one but the pre-petition equity holders was given an opportunity to purchase). Evidence of the value of an interest in the debtor in the marketplace might be considered. *See In re U.S. Truck Co.*, 47 B.R. 932, 942–43 (E.D.Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir.1986).

This debtor's proposed "new value" is neither substantial nor reasonably equivalent to what re-investing interest holders will receive. Under the amended plan, existing interest holders may acquire ownership of the reorganized debtor by paying $150,000 in money or money's worth at confirmation. The $100,000 balance of "new capital" is deferred for one year in the form of notes from the investors. That the deferred portion must be secured enhances somewhat its "money's worth" characteristics; however, even a note with security is not a current payment of money. The $100,000 must at least be discounted to reflect the time value of money. That the investors are not contributing the full $250,000 at confirmation suggests oth-

er advantages are to be realized by deferring 40% of the new investment for one year. During that year, management might forgive the additional investment, discount that investment, or otherwise reduce the economic value of those promises to pay. The $250,000 proposed "new value" is worth substantially less than $250,000 to creditors of the debtor.

By the debtor's projections, the net operating income of the debtor will be approximately $460,000 a year after confirmation. There is no evidence that the property is depreciating in value, that rents will decrease in the future or that there is any substantial risk of loss of these projected net operating incomes. Control of these net operating incomes has substantial economic value to the interest holders and to existing management.

All of the "new value" to be contributed by existing interest holders will be used to retire the claims of insiders or will benefit, directly or indirectly, insiders of the debtor. The $4,000 proposed payment to Class 7B will be paid to four insiders, including the management company owned by Beuerlein and Wunderlich. The $21,000 to be paid to Class 8 claim holders will be paid directly to Beuerlein and Associates and to Beuerlein and Wunderlich. The $58,000 settlement with Security Federal will release the guaranty of Beuerlein and Wunderlich. The $100,000 settlement with Dominion will satisfy a claim that is guaranteed by Beuerlein and Wunderlich. The $26,000 payment to the trade creditors will relieve Beuerlein and Wunderlich of their personal liability as general partners of the debtor. Existing interest holders will contribute $150,000 on the effective date of the plan and the reorganized debtor will immediately disburse $209,000 directly to insiders or to the holders of claims that are guaranteed by Beuerlein and Wunderlich. The plan does *not* use the "new capital" to pay the unsecured claim of the RTC. Rather, the plan proposes to use net rents accumulated by the debtor during the administrative period to pay 20% of the unsecured deficiency claim of the RTC.

Beuerlein and Wunderlich will receive more cash from the debtor on the effective date of the plan than they must pay to remain owners. Under the amended plan, Beuerlein and Wunderlich reacquire the general partner's interest in the debtor for $12,500 and immediately receive a distribution of approximately $17,000.

For purposes of the absolute priority rule, it could be said that the value of what existing interest holders will receive on account of their new investments is "greater" than the new money invested because of payments to insiders and to claim holders with guaranties by insiders; or it could be said that it is inappropriate to include as "new value" a contribution by an existing interest holder that will be used to satisfy an obligation of that interest holder or simply to change the form of an existing risk of the interest holder. By either approach, Beuerlein and Wunderlich in particular are revealed to be making no substantial new economic commitment to the reorganization of this debtor—they are reacquiring their ownership rights in exchange for a small contribution of cash that will be immediately returned to them or used to retire obligations that they are already personally obligated to pay. The proposed plan is not fair and equitable to the RTC.

An appropriate order will be entered.

## ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED AND DECREED that confirmation of the debtor's amended plan is denied.

The debtor having twice failed at confirmation of a plan and the stay having been continued in effect only to permit the debtor to attempt this amended plan, IT IS FURTHER ORDERED that the motion of the RTC for relief from the stay is granted.

IT IS SO ORDERED.