**In re AZTEC COMPANY, d/b/a Aztec Villa Apartments, Debtor.**

**Bankruptcy No. 388–05495.**

United States Bankruptcy Court, M.D. Tennessee.

May 11, 1989.

G. Rhea Bucy, Thomas H. Forrester, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for debtor.

John H. Bailey, III, Barbara A. Rose, Bass, Berry & Sims, Nashville, Tenn., for Federal Home Loan Mortg. Corp.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The first mortgage holder objects to confirmation in this one asset Chapter 11 case. The issues are: (1) whether the interest rate offered the first mortgage holder by the debtor's plan satisfies the "fair and equitable" test for confirmation in 11 U.S.C.S. § 1129(b)(2)(A)(i)(II) (1987); (2) whether the debtor's separate classification of the deficiency claim of the objecting mortgage holder satisfies the "unfair discrimination" and "fair and equitable" tests for confirmation in § 1129(b)(1); and (3) whether retention of existing interests in the debtor based on subscriptions for new capital contributions satisfies the "absolute priority rule" in § 1129(b)(2)(B)(ii). Confirmation is denied because the debtor's proposed interest rate is insufficient.

This is a core proceeding. 28 U.S.C.S. § 157(b)(2)(L) (Supp.1988). The following constitute findings of fact and conclusions of law. Bankr.R. 7052.

### I.

Aztec Company is a Tennessee joint venture organized in 1984 to purchase and operate a 128–unit apartment complex in Panama City, Florida. Aztec filed this Chapter 11 case on August 24, 1988.

At the petition, the debtor's apartment complex was subject to a nonrecourse first mortgage in the approximate principal amount of $1.9 million, held by the Federal Home Loan Mortgage Corporation ("FHLMC"). FHLMC asserts total claims of approximately $2.3 million. By prior orders, the value of its collateral, and thus the amount of the allowed secured claim of FHLMC was fixed at $1.7 million.

The project is subject to a second mortgage in the original principal amount of $350,000. This second mortgage is held by Dynamerica Investments, a Tennessee partnership composed of Edwin B. Raskin and Herschel Katzman. Dynamerica asserts a claim of approximately $396,000. The claim of Dynamerica is entirely unsecured.

In addition to being an owner of Dynamerica, Edwin B. Raskin owns a joint venture interest in the debtor. He served as trustee of the joint venture and, together with Mr. Katzman, Edwin B. Raskin owns a management company, Edwin B. Raskin Company, which has been responsible for day-to-day management of the debtor's apartment complex. Because of shortfalls in revenues from operations, at the petition, Edwin B. Raskin Company was owed approximately $86,000 for unreimbursed expenses incurred by the debtor but paid by Edwin B. Raskin Company. During the year prior to commencement of the Chapter 11 case, the debtor's unsecured debt to Edwin B. Raskin Company was reduced by approximately $150,000.

The debtor's amended plan separately classifies the $1.7 million secured claim of FHLMC to bear interest at 10–⅜% payable in monthly installments of principal and interest calculated on a 30–year amortization. The mortgage would be nonrecourse and callable on the 10th anniversary of the effective date of the plan.

The deficiency claim of FHLMC—the difference between the value of its collateral, $1.7 million, and the amount of its claim, approximately $2.3 million—is separately classified with the wholly unsecured second mortgage of Dynamerica to be paid three percent in cash and notes.

The debtor's plan separately classifies all allowed unsecured claim holders other than the deficiency on the first mortgage of FHLMC and the wholly unsecured second mortgage of Dynamerica—including all trade creditors at the petition—to be paid in full with interest in two equal consecutive annual installments of principal and

interest. Included in this class of unsecured claim holders is the $86,000 claim of the Edwin B. Raskin Company.

The holders of joint venture interests in the debtor are permitted by the plan to retain their interests by subscribing for the contribution of new capital. The debtor's plan states that $500,000 must be raised to reorganize and each interest holder can retain its joint venture interest by subscribing to a pro rata share of $500,000 of new capital. These subscriptions are conditioned on court approval of the proposed 10–⅜% interest rate to FHLMC.

## II.

The debtor's plan cannot be confirmed over the objection of FHLMC, because the interest rate proposed by the debtor does not provide FHLMC with the allowed amount of its secured claim on the effective date of the plan.

At cram down in a Chapter 11 case an impaired, objecting allowed secured claim holder is entitled to retain its lien and "receive on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C.S. § 1129(b)(2)(A)(i)(II). As explained in the legislative history, cram down over the objection of an impaired allowed secured claim holder "contemplates a present value analysis that will discount value to be received in the future ... if the interest rate paid is equivalent to the discount rate used, the present value and the face future value will be identical." H.R. REP. NO. 595, 95th Cong., 1st Sess. 414 (1977), *reprinted in*, 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 6370. *See In re Kain*, 86 B.R. 506 (Bankr. W.D.Mich.1988); *In re Park Avenue Partners Limited Partnership*, 95 B.R. 605 (Bankr.E.D.Wis.1988); *In re Camino Real Landscape Maintenance Contractors*, 818 F.2d 1503 (9th Cir.1987); *United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986).

The United States Court of Appeals for the Sixth Circuit has not fixed the "cram down" interest rate necessary to provide present value for purposes of § 1129(b)(2)(A)(i)(II).

As Chief Judge Paine noted recently in *In re Memphis Partners Limited Partnership*, 99 B.R. 385 (Bankr.M.D.Tenn.1989), there is Sixth Circuit authority interpreting similar "present value" language in 11 U.S.C.S. § 1325(a)(5) (1987). In *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982), the Sixth Circuit determined that the holder of an allowed secured claim at confirmation in a Chapter 13 case is entitled to interest on its claim paid over time pursuant to § 1325(a)(5) at "the current market rate of interest used for similar loans in the region." *Whitman*, 692 F.2d at 431. Judge Merritt explained that § 1325(a)(5) has the effect of requiring the creditor to make "a new loan to the debtor in the amount of the current value of the collateral. Under this theory, the most appropriate interest rate is the current market rate for similar loans at the time the new loan is made...." *Id.*

The present value language of § 1325(a)(5)(B)(ii) discussed in *Whitman*, is by words and design indistinguishable from the present value language applicable at cram down in a Chapter 11 case under § 1129(b)(2)(A)(i)(II). Other courts have reasoned by similar analogy to the present value language applicable to the payment of tax claims under § 1129(a)(9)(C). *See, e.g., United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986); *In re Camino Real Landscape Maintenance Contractors*, 818 F.2d 1503 (9th Cir.1987); *In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983) *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

*Whitman* stands for two propositions: (1) the appropriate rate of interest to provide present value to the holder of an allowed secured claim at cram down is "the current market rate of interest used for similar loans in the region"; and, (2) current market rate for similar loans should be determined "at the time the new loan is made."

"Current market rate of interest used for similar loans in the region" is difficult of application at cram down in a Chapter 11 case. Both the debtor's expert and the expert offered by FHLMC observed that there is no market for the loan proposed by this plan. The allowance of secured claims under 11 U.S.C.S. § 506 (1985) compels that Chapter 11 plans will usually propose to pay allowed secured claim holders an amount exactly equal to the value of the underlying collateral. It follows inevitably that the cram down treatment of a secured claim holder will often involve a 100% loan to value ratio. There will be no "down payment" or post-confirmation equity in the property to protect the lender. The borrower will be a debtor in a Chapter 11 case whose credit unworthiness has been fully demonstrated. It was the testimony at the confirmation hearing that there is no market for a loan with these characteristics.

Both the debtor's expert and the expert offered by FHLMC explained that real estate mortgages are priced by lenders at percentage points over the rate for treasury bills of a maturity approximating the length of the loan (here, 10 years because of the 10-year call provision in the debtor's amended plan). The percentage added on —the number of "basis points" added by the lender—reflects many factors including the lender's evaluation of the risk involved in this loan, the lender's cost of funds, the lender's best guess about the future of the mortgage market, the internal rates of return required by a particular lender, the administrative expenses of managing this loan and the rest of the lender's portfolio and the availability of "product." The experts disagreed what percentage above the applicable treasury bill rate would best reflect the (nonexistent) market for this loan.

The debtor's expert testified that once a lender has added more than 150 basis points—one and one-half percent above the applicable treasury bill rate—the addition of greater premiums becomes almost meaningless as the demonstrated risk of the loan exceeds the risks reasonably undertaken by lenders. The debtor's expert felt that 150 basis points would be the appropri-

ate add on in this case. FHLMC's expert conceded that there was no reliable data about loans above 200 basis points over the applicable treasury bill rate, but this expert felt that any prudent lender would require an "above market rate" of interest in the 200 basis points range and would require other promises and conditions such as additional collateral or personal guarantees. Neither is offered by the debtor's amended plan.

I am satisfied that 200 basis points—two percent above the applicable treasury bill rate—is the least that any lender in any possible market for this loan would be willing to consider. In addition to the 100% loan to value proposed by the debtor, it is clear from the evidence that the property securing the loan is aging, there is substantial deferred maintenance, the apartment complex has a significant vacancy rate because of structural problems with roofs and its location in a difficult rental market, the debtor has realized no rent increase in five years and has no prospects for significant short term improvement in financial condition. On these facts, two percent over the applicable 10-year treasury bill rate is the least necessary to provide present value under *Whitman.*

The debtor's proposed 10-⅜% interest rate was calculated as 150 basis points above the pricing of treasury bills with a constant maturity of 10 years determined from the Federal Reserve's *Statistical Release* for September 15, 1988. September 15, 1988 was selected as the benchmark for the treasury bill rate because at prior hearings the debtor's expert witness valued the underlying apartment complex at September 16, 1988. The debtor argues that the appropriate cram down interest rate should be indexed to the same date because interest rates on that date were used to determine the discount rates and capitalization rates used by its expert witness to value the income streams and other property that secured FHLMC's claim. At least in part because treasury bill rates have risen since September 15, 1988, FHLMC argues that the cram down interest rate should be determined in a Chapter 11 case "as of the

effective date of the plan"—defined by this debtor's amended plan to be 30 days after entry of the confirmation order or one business day after the order of confirmation becomes final and unappealable.

*Whitman* requires that the cram down interest rate be fixed for confirmation purposes at the "time the new loan is made." *Whitman*, 692 F.2d at 431. Confirmation of a Chapter 11 plan effects the creation of a new obligation between the debtor and its lender. Though the "new loan" at confirmation of a Chapter 11 plan may not become payable until or after the "effective date of the plan," the new loan is fixed in its terms and conditions at confirmation. Given that there is typically little delay in entry of the confirmation order, the hearing on confirmation is the date consistent with *Whitman* to fix interest rates for cram down purposes.

Benchmarking interest rates at the date of an appraiser's report or at the date of the hearing on the value of collateral or at the effective date defined in a plan is not supported by *Whitman*. A valuation hearing under Bankruptcy Rule 3012 may be separated in time by several months from any "new loan" at confirmation. The treasury bill rate at or near the date used by an appraiser for discounting or capitalizing streams of income is but one of many factors applicable to valuation of income producing property. Typically, the effective date of a Chapter 11 plan will be 30 days or more after the hearing on confirmation. Predicting interest rates at a confirmation hearing based on rates to be quoted in the future would compound an already mystical interest rate calculus. Upon objection to confirmation, this court must determine the feasibility of a proposed Chapter 11 plan at the hearing on confirmation. *See* 11 U.S.C.S. § 1129(a)(11). There must be certainty to the rate of interest that will be applicable at the confirmation hearing, else the feasibility calculation cannot be accomplished.

The hearing on confirmation in this case occurred on April 21, 1989. The evidence at trial indicates that treasury instruments of a constant maturity of 10 years were quoted on Thursday, April 20, 1989 at 9.17%. The appropriate cram down interest rate in this case was 200 basis points over 9.17% or 11.17%.

The objection of FHLMC to confirmation is sustained because the amended plan does not propose to pay FHLMC the present value of its allowed secured claim. Having determined that the interest rate to accomplish confirmation must be higher than the 10–⅜% proposed by the plan, a precondition to enforcement of the subscription agreements for new capital contributions in the debtor's amended plan has failed. Although the parties have most ably briefed other issues presented at the confirmation hearing, absent enforceable new capital commitments and an enhancement of the interest rate to FHLMC, it is premature to attempt resolution of those issues.

An appropriate order will be entered.

## ORDER

By separate order and memorandum, the court has resolved objections to confirmation in this Chapter 11 case.

Joined for hearing with the objections to confirmation was the request for relief from the stay of Federal Home Loan Mortgage Corporation. The denial of confirmation of the debtor's amended plan is cause for modification of the automatic stay. IT IS ORDERED that the debtor shall have 20 days in which to propose a second amended plan or in which to seek a stay of this court's order denying confirmation. Absent appropriate action by the debtor, at the expiration of this 20–day period, the Federal Home Loan Mortgage Corporation may submit an order granting relief from the stay.

IT IS SO ORDERED.