**In re AZTEC COMPANY, d/b/a Aztec Villa Apartments, Debtor.**

**Bankruptcy No. 388–05495.**

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 22, 1989.

G. Rhea Bucy, Thomas H. Forrester, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for debtor.

John H. Bailey, III, Barbara A. Rose, Bass, Berry & Sims, Nashville, Tenn., for Federal Home Loan Mortgage Corp.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This is a contested Chapter 11 confirmation. Because the amended plan discriminates unfairly against an impaired non-consenting class, confirmation is denied. The following constitute findings of fact and conclusions of law. Bankr.R. 7052.

### I.

The debtor is a joint venture organized in 1984 to own and operate the Aztec Villa Apartments in Panama City, Florida. The debtor purchased the apartment complex

for $2,900,000 and financed part of the purchase through a non-recourse note secured by a first mortgage. Federal Home Loan Mortgage Corporation (FHLMC) acquired this note and first mortgage.

The debtor financed the balance of the purchase through a note to the seller secured by a second mortgage. The Edwin B. Raskin Company (EBR) acquired this note and second mortgage. EBR is owned by Edwin B. Raskin and Herschel Katzman, both joint venturers in the debtor. Raskin was also joint venture trustee of the debtor. EBR assigned the second mortgage to Dynamerica Investments of Brentwood, Tennessee. Dynamerica is a general partnership composed of Raskin and Katzman.

At the petition, the principal amount owed on the first mortgage was $1,880,000. FHLMC asserts a total claim of $2,300,000. The full amount of the second mortgage, $350,000, was unpaid at the petition. Dynamerica asserts a total claim of $396,000. At a prior hearing, the value of the apartments was determined to be $1,700,000.

The joint venturers of the debtor are solvent. It is stipulated that all pre-petition recourse claims would be entitled to full recovery from the principals of the debtor in a Chapter 7 case. See 11 U.S.C. § 723.

Before the petition, EBR managed the apartments for the debtor and received a management fee. EBR ordered goods and services for the debtor and paid the debtor's bills. EBR used purchase orders which plainly stated that it was acting only as an agent for the owner. The debtor reimbursed EBR for some but not all pre-petition expenses of management and operations. At the petition, EBR had a claim of $83,566.62 for unreimbursed expenses.

In its first plan, the debtor classified all unsecured trade debt and the EBR claim for unreimbursed expenses in Class 5. The EBR claim constituted over 90% in amount of Class 5 claims. The FHLMC deficiency on its non-recourse first mortgage and the wholly unsecured second mortgage of Dynamerica were classified together in Class 6. The plan proposed to pay Class 5 claims in full with interest through two-year promissory notes. Class 6 claimholders would receive three percent in cash and notes. The FHLMC secured claim was to be paid in full through a note amortized at $10\frac{3}{8}\%$ for 30 years, with a 10 year call. To retain interests in the reorganized debtor, joint venturers were required to contribute new capital totalling $500,000.

By prior order, confirmation of the first plan was denied because the proposed interest rate failed to give FHLMC the present value of its secured claim. In re Aztec Co., 99 B.R. 388 (Bankr.M.D.Tenn. 1989).

The debtor presented this modified plan which effects a change only in the treatment of the secured claim of FHLMC. The modified plan fixes the interest rate on the secured portion of FHLMC's first mortgage at 200 basis points over the 10-year Treasury bill rate at the date of the confirmation hearing. Because of movement in interest rates, this rate is actually lower than the rate proposed in the first plan. The Treasury bill rate on the date of the second confirmation hearing was 8.02% and so the proposed interest rate is 10.02%.

FHLMC objects to confirmation of the modified plan on these grounds: (1) no impaired class accepted the plan; (2) the plan improperly classifies its unsecured deficiency claim; (3) the debtor has failed to prove that the interest rate to be paid on its secured claim will provide "present value;" (4) the plan fails to satisfy the absolute priority rule; and (5) the proposed plan discriminates unfairly against FHLMC.

## II.

■ If there is an impaired class of claims, to accomplish confirmation at least one class of impaired claims must accept the plan. 11 U.S.C. § 1129(a)(10) (1988). Votes of insiders are not counted. Of the impaired classes, only Class 5 voted to accept the modified plan.

FHLMC asserts that the vote in Class 5 does not meet the requirements of § 1129(a)(10) because EBR's insider vote is not counted and the "trade creditors" are

really EBR's creditors, not creditors of the debtor. The Class 5 creditors, other than EBR, provided goods and services for the maintenance and operation of the apartment complex. EBR ordered the goods and services and paid the bills, but the evidence established that EBR acted as agent in these transactions and disclosed that agency to the suppliers, etc. The non-insider claimholders in Class 5 had rights to payment by the debtor at the petition. 11 U.S.C. § 101(4)(A). They are impaired under the plan. 11 U.S.C. § 1124 (1988).

■ Class 5 has accepted the amended plan. The non-insider Class 5 creditors overwhelmingly voted to accept the original plan. The modified plan did not change their treatment. Pursuant to 11 U.S.C. § 1127(d) and Fed.R.Bankr.P. 3019, Class 5 is deemed to have accepted the modified plan. *See In re Sherwood Square Associates*, 87 B.R. 388, 390 (Bankr.D.Md.1988).

### III.

The separate classification of FHLMC's unsecured deficiency is permitted on the facts of this case.

■ The United States Court of Appeals for the Sixth Circuit has embraced a flexible approach to the classification of unsecured claims in Chapter 11 cases under 11 U.S.C. § 1122. In *In re U.S. Truck*, 800 F.2d 581 (6th Cir.1986), the court permitted separate classification of a union's claim, though constructed for the purpose of securing the acceptance of an impaired class, where the union's interests in the reorganization "differed substantially from those of the other impaired creditors." 800 F.2d at 587. It is this court's reading of *U.S. Truck* that an unsecured claimholder with unique attributes or interests dissimilar from other unsecured claimholders may be separately classified.

FHLMC's non-recourse unsecured deficiency claim is unique. Class 5 consists of creditors that have "natural" recourse outside of bankruptcy against the joint venturers. The joint venturers are solvent. They would have to pay all Class 5 claims in full under state law. They would be liable to the trustee for any deficiency in payment of the Class 5 claims in a Chapter 7 liquidation. 11 U.S.C. § 723(a) (Supp. V 1987). The "unnatural" unsecured deficiency claim of FHLMC exists only by operation of § 1111(b), and only in a Chapter 11 case. 11 U.S.C. § 1111(b) (1982). Outside of Chapter 11, the FHLMC note is non-recourse and any deficiency could not be pursued against Aztec or its joint venturers.

FHLMC has a substantial other interest that it does not share with unsecured claimholders in Class 5: if classified with the recourse creditors in Class 5, it would have every incentive to vote its large deficiency claim to affect the treatment of its *secured* claim by defeating confirmation of any plan. On these facts, the debtor is permitted by *U.S. Truck* to separately classify the non-recourse deficiency claim. On similar facts, one court has concluded that separate classification may be mandatory. *See In re Greystone III Joint Venture*, 102 B.R. 560 (Bankr.W.D.Tex.1989).

That the debtor is permitted to separately classify does not determine whether the plan is "fair and equitable" with respect to the separate class. *See* Part VI, *infra*.

### IV.

■ Section 1129(b)(2)(A)(i) requires that an objecting, impaired, secured claimholder receive "cash payments ... of a value, as of the effective date of the plan" at least equal to the amount of its allowed secured claim. A plan provides "value, as of the effective date of the plan" if the allowed amount of the secured claim is paid over time with interest at the "market rate" for similar loans in the region. *United States v. Arnold*, 878 F.2d 925 (6th Cir.1989); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). The appropriate interest rate in this case was previously determined to be at least 200 basis points over the relevant Treasury bill rate. *In re Aztec Co.*, 99 B.R. at 390–91.

FHLMC submitted additional expert testimony on interest rates at the hearing on this modified plan. FHLMC's new expert had nothing new to say. Like the experts before, he testified that insurance compa-

nies are the primary source of permanent financing for income producing properties. He testified that insurance companies would not make a loan like the treatment proposed in the plan for FHLMC's secured claim. This was previously acknowledged. *In re Aztec Co.*, 99 B.R. at 391.

The repeated testimony by experts that no market exists for a loan like this plan is not dispositive of the issue presented. Section 1129(b)(2)(A)(i) requires that a creditor receive the present value of its allowed secured claim under the plan. Every stream of future payments with a given set of risk factors has a present value. *Whitman* instructs this court to use market rates to determine present value. That the proposed loan is not similar to loans made in any market does not end the inquiry. Chapter 11 does not implode merely because there is no "market" for loans of the sort that can be forced upon a secured claimholder under § 1129(b). *Whitman* indicates the preferred proof on which to rely. The unavailability of that proof only suggests that some other proof is necessary.

No evidence has been offered to upset the conclusion that 200 basis points over applicable Treasury bill rates is minimally sufficient to give FHLMC the present value of its allowed secured claim.

### V.

■ The absolute priority rule provides "... a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 121, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939); *In re U.S. Truck Co., Inc.*, 800 F.2d at 588. The Sixth Circuit has endorsed the controversial "new value" exception to the absolute priority rule. Under *U.S. Truck*, equity holders may retain interests without paying senior creditors in full if they contribute additional capital which is essential, substantial and at least

equal to the fair value of the equity retained. 800 F.2d at 588.

The requirements of *U.S. Truck* are satisfied here. The plan requires that the joint venturers invest an additional $500,-000 in the debtor. Each joint venturer can retain an interest in the debtor only by subscribing a share of the new $500,000 investment. The uncontroverted evidence is that the debtor cannot continue to operate and cannot reorganize without new capital. There are many physical repairs that cannot be accomplished from current revenues. Many apartment units cannot be rented until new money is available. No sane outside investor would put new money in this project given its physical condition, debt structure and the difficult rental market in which it competes. Existing joint venturers have unique tax incentives to make the new investment. The $500,000 new investment is far in excess of the value of the interests that the venturers will retain in the debtor. The plan satisfies § 1129(b)(2)(B)(ii) as interpreted in this circuit by *U.S. Truck*.

### VI.

■ FHLMC last asserts it is the victim of unfair discrimination because its deficiency claim will receive a 3% dividend while other unsecured claimholders, including EBR, will be paid in full. This court agrees.

Section 1129(b)(1) prohibits the plan to "discriminate unfairly" against an impaired class that has not accepted the plan. Some courts have reduced unfair discrimination to a mechanical rule that, even if appropriately placed in more than one class, all unsecured claimholders must be paid the same percentage of claims. *See In re Greystone III Joint Venture*, 102 B.R. 560 (Bankr.W.D.Tex.1989); *In re Johns–Manville Corp.*, 68 B.R. 618, 636 (Bankr.S.D.N.Y.1986); *In re S & W Enterprise*, 37 B.R. 153, 159–60 (Bankr.N.D.Ill.1984); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 831 (Bankr.S.D.N.Y.1982). Although certainty in the next case is favored by this view, the statute offers no such comfort. Section 1129(b)(1) prohibits only unfair dis-

crimination, not all discrimination. The mechanical approach threatens the vitality of the word "unfairly" in § 1129(b)(1).

The legislative history of § 1129(b)(1) considers only one circumstance which would support disparate treatment, a subordination agreement. *See* REP. NO. 595, 95th Cong., 1st Sess. 416–17 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6372, 6373. The Committee Reports do not address the general boundaries of unfair discrimination. Some courts have considered limiting "unfair discrimination" to cases involving subordination agreements. *See In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir.1986); *In re Martin*, 66 B.R. 921, 929–30 (Bankr.D.Mont.1986). To the extent the legislative history endorses a restricted application of the unfair discrimination standard in § 1129(b)(1), it is inconsistent with the unambiguous language of the statute.

Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination. 11 U.S.C. § 1322(b)(1) permits a Chapter 13 debtor to "... designate a class or classes of unsecured claims, as provided in section 1122 ..." but the plan "... may not *discriminate unfairly* against any class so designated ..." (emphasis added). Many courts have exercised discretion under § 1322(b)(1) to allow and to disallow proposed discriminations among classes of unsecured claims, depending on the totality of circumstances of individual Chapter 13 cases. *See, e.g., Friendly Finance Discount Corp. v. Bradley*, 705 F.2d 1409 (5th Cir.1983) ("a scheme favoring a fully secured creditor over an unsecured one is a sound exercise of discretion under §§ 1322 and 1325 of the Code."); *In re Powell*, 15 B.R. 465, 5 COLLIER BANKR.CAS.2d (MB) 775 (Bankr.N.D.Ga.1981) (priority claims appropriately classified separately from other unsecured claims); *In re Curtis*, 2 B.R. 43, 5 BANKR.CT.DEC. (CRR) 1214 (Bankr.W.D.Mo.1979) (100% payment of child support and 10% payment of other unsecured debt is fair); *In re Sutherland*, 3 B.R. 420, 6 BANKR.CT.DEC. (CRR) 13 (Bankr.W.D.Ark.1980) (medical debts may be treated more favorably than other unsecured claims); *In re Hartdegen*, 67 B.R. 230 (Bankr.N.D.Ala.1986) (fair discrimination for debtor to pay unsecured claimholder directly where the claim was omitted in the original statements and schedules); *In re Green*, 70 B.R. 164 (Bankr.W.D.Ark. 1986) (unfair discrimination to pay 100% of a claim secured by property that does not belong to the debtor); *In re Perskin*, 9 B.R. 626, 7 BANKR.CT.DEC. (CRR) 798, 4 COLLIER BANKR.CAS.2d (MB) 294 (Bankr.N.D.Tex.1981) (fair discrimination to prefer credit cards needed by the debtor, a traveling salesman); *In re Todd*, 65 B.R. 249, 14 BANKR.CT.DEC. (CRR) 1221 (Bankr.N.D.Ill.1986) (fair discrimination to pay 100% of claim co-signed by debtor's police street partner); *Foster v. Heitkamp*, 670 F.2d 478 (5th Cir.1982) (debtor cannot separately classify secured claim for payment directly by the debtor where debtor is curing arrearages on the same claim through the Chapter 13 trustee); *In re Kovich*, 4 B.R. 403, 6 BANKR.CT.DEC. (CRR) 482, 2 COLLIER BANKR.CAS.2d (MB) 203 (Bankr.W.D.Mich.1980) (rent arrearage may be separately classed); *In re Hill*, 4 B.R. 694, 6 BANKR.CT.DEC. (CRR) 568, 2 COLLIER BANKR.CAS.2d (MB) 681 (Bankr.D.Kan.1980) (legal fees are one possible claim classification); *In re Hill*, 4 B.R. 694, 6 BANKR.CT.DEC. (CRR) 568, 2 COLLIER BANKR.CAS.2d (MB) 681 (Bankr.D.Kan.1980) (retail merchants and finance companies are one possible classification); *In re Brown*, 7 B.R. 529, 2 COLLIER BANKR.CAS.2d (MB) 869 (Bankr.S. D.N.Y.1980) (contingent car collision claims can be separately classified); *In re Freshley*, 69 B.R. 96, 15 BANKR.CT.DEC. (CRR) 533 (Bankr.N.D.Ga.1987) (fair discrimination to pay 100% of student loan and 1% of other unsecured claims where debtor intends to return to school); *AMFAC Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 9 BANKR.CT.DEC. (CRR) 451 (9th Cir. BAP 1982) (separate classification for business debtor's insurance company and material suppliers may be permitted on

appropriate facts); *In re Harris*, 62 B.R. 391, 14 BANKR.CT.DEC. (CRR) 640, 15 COLLIER BANKR.CAS.2d (MB) 103 (Bankr.E.D.Mich.1986) (unfair discrimination to divide debts into consumer and business creditors where the division is arbitrary); *In re Ratledge*, 31 B.R. 897, 10 BANKR.CT.DEC. (CRR) 1241 (Bankr.E.D. Tenn.1983) (classification based on amount of claim is fair discrimination where unsecured claimholders would get nothing in a Chapter 7 case).

To assess the fairness of a discrimination under § 1322(b)(1), some courts consider four factors:

- (1) whether the discrimination is supported by a reasonable basis;
- (2) whether the debtor can confirm and consummate a plan without the discrimination;
- (3) whether the discrimination is proposed in good faith; and
- (4) the treatment of the classes discriminated against.

*See In re Freshley*, 69 B.R. 96, 15 BANKR. CT.DEC. (CRR) 533 (Bankr.N.D.Ga.1987); *In re Harris*, 62 B.R. 391, 14 BANKR.CT. DEC. (CRR) 640, 15 COLLIER BANKR. CAS.2d (MB) 103 (Bankr.E.D.Mich.1986); *In re Ratledge*, 31 B.R. 897, 10 BANKR. CT.DEC. (CRR) 1241 (Bankr.E.D.Tenn. 1983); *AMFAC Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512, 9 BANKR.CT.DEC. (CRR) 451 (9th Cir. BAP 1982); *In re Perkins*, 55 B.R. 422, 424 (Bankr.N.D.Okla.1985); *In re Dziedzic*, 9 B.R. 424, 427 (Bankr.S.D.Tex.1981); *In re Kovich*, 4 B.R. 403, 407 (Bankr.W.D.Mich. 1980). Other courts have departed from or embellished upon the four-factor test of fairness. *See In re Green*, 70 B.R. 164 (Bankr.W.D.Ark.1986); *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988).

The Chapter 13 cases interpreting the fairness of discrimination among classes under § 1322(b)(1) provide guidelines and analysis useful for § 1129(b)(1) purposes.[1]

Many of the same factual considerations arise in Chapter 11 cases.

For example, does the proposed discrimination protect a relationship with specific creditors that the debtor needs to reorganize successfully? *See In re Perskin*, 9 B.R. 626, 7 BANKR.CT.DEC. (CRR) 798, 4 COLLIER BANKR.CAS.2d (MB) 294 (Bankr.N.D.Tex.1981) (separate favorable classification of credit cards is fair for a traveling salesman); *In re Kovich*, 4 B.R. at 407 (discrimination in favor of a landlord may be fair if alternative for debtor is Chapter 7 case in which other unsecured claimholders will receive no distribution); *In re Freshley*, 69 B.R. 96, 15 BANKR.CT. DEC. (CRR) 533 (Bankr.N.D.Ga.1987) (not unfair to pay student loan in full and 1% to other unsecured claims where debtor's future income prospects depend on finishing school); *In re Ragsdale*, 15 B.R. 668 (Bankr.N.D.Ga.1980) (fair to discriminate in favor of claimholders partially secured by a car necessary to the debtor's business); *AMFAC Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512, 9 BANKR.CT. DEC. (CRR) 451 (9th Cir.BAP 1982) (on appropriate facts, a debtor engaged in business could demonstrate fairness of discrimination in favor of material suppliers and business insurer); *In re Hill*, 4 B.R. 694, 699 (Bankr.D.Kan.1980) (higher payments to health care professionals justified to ensure continued treatment); *In re Terry*, 78 B.R. 171 (Bankr.E.D.Tenn.1987) (fair discrimination to modestly benefit local creditors with whom the debtor will have to deal in the future).

Does the discrimination primarily preserve assets for or otherwise benefit the debtor with no corresponding benefit for creditors? *See In re Green*, 70 B.R. 164 (Bankr.W.D.Ark.1986) (unfair discrimination to pay 100% of a claim secured by a home owned by the debtor's mother that the debtor anticipates inheriting); *In re Bowles*, 48 B.R. 502, 12 BANKR.CT.DEC. (CRR) 1297, 12 COLLIER BANKR.CAS.2d 952 (Bankr.E.D.Va.1985) (plan favorably

---

1. Unfair discrimination for § 1129(b)(1) purposes does not exactly parallel analysis of § 1322(b)(1). For example, § 1322(b)(1) specifically authorizes a Chapter 13 debtor to treat co-signed consumer debts "differently than other unsecured claim." There is no similar provision in Chapter 11.

classifying criminal restitution unfairly visits the debtor's misdeeds on creditors).

Even if some discrimination is necessary to accomplish confirmation or consummation of a plan, is there a meaningful recovery for creditors disadvantaged by the discrimination? *See Barnes v. Whelan*, 689 F.2d 193 (D.C.Cir.1982) (rejects 100% payment of co-signed claim and 1% to other unsecured claims); *In re Gunn*, 37 B.R. 432 (Bankr.D.Or.1984) (rejects 100% payment of partially secured debt and 3% to other unsecured claimholders); *In re Blackwell*, 5 B.R. 748 (Bankr.W.D.Mich. 1980) (rejects 100% payment to landlord with 5% payment to other unsecured claimholders); *In re Johnson*, 69 B.R. 726, 15 BANKR.CT.DEC. (CRR) 660 (Bankr.W.D. N.Y.1987) (rejects 100% payment of claim that would be nondischargeable in a Chapter 7 case and 15% payment to other unsecured claimholders); *In re Harris*, 62 B.R. 391, 14 BANKR.CT.DEC. (CRR) 640, 15 COLLIER BANKR.CAS.2d (MB) 103 (Bankr.E.D.Mich.1986) (rejects 100% payment of consumer debts and 5% payment of business creditors of debtor's failed business).

Here, the proposed discrimination preserves assets for insiders of the debtor at the expense of FHLMC. EBR, a corporation owned by insiders of the debtor, holds $83,000 of the $88,000 of claims in Class 5. The plan will pay EBR's $83,000 claim in full. The $1,000,000 of Class 6 claims will eventually be paid $30,000; over one-third of that $30,000 will go to Dynamerica, another entity owned by insiders. Nothing in the record indicates that the debtor needs to protect its relationship with EBR, or with any other Class 5 creditor, to reorganize successfully. FHLMC will receive $18,000 on account of its $600,000 Class 6 deficiency. The proposed payment to FHLMC is diminimus. The proposed $500,-000 recapitalization of the debtor will enure

almost entirely to the benefit of the owners and insiders.[2] On these facts, the plan unfairly discriminates.

Several Chapter 13 cases interpreting § 1322(b)(1) have concluded that it is fair discrimination to favorably classify claims that are entitled to special treatment under other sections of the Code. For example, priority claims that are entitled to payment in full under § 1322(a)(2) can be separately classified for preferred treatment under § 1322(b)(1). *In re Powell*, 15 B.R. 465, 5 COLLIER BANKR.CAS.2d (MB) 775 (Bankr.N.D.Ga.1981). Claims for alimony or child support that would be nondischargeable under § 1328(a)(2) can be paid in full in a plan that compromises other unsecured claims without violating the unfair discrimination standard. *In re Curtis*, 2 B.R. 43, 5 BANKR.CT.DEC. (CRR) 1214 (Bankr.W.D.Mo.1979); *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo.1987); *In re Haag*, 3 B.R. 649, 6 BANKR.CT.DEC. (CRR) 367, 2 COLLIER BANKR.CAS.2d (MB) 144 (Bankr.D.Or.1980).

By analogy, the debtor argues it is fair discrimination to pay Class 5 in full while paying a small fraction to Class 6 because the claimholders in Class 5 are "natural" recourse claimholders who would have rights against the (solvent) joint venturers outside of bankruptcy, while Class 6 claimholders are "unnatural" recourse claims by operation of § 1111(b) only in Chapter 11. In a Chapter 7 case, the debtor reasons, the trustee has a claim against the joint venturers under § 723(a) to satisfy Class 5, but the Class 6 creditors would have no rights against the joint venturers directly or through the Chapter 7 trustee. Paying Class 5 in full, according to the debtor, is not only fair discrimination, it is required by § 1129(a)(7) in order to pay the Class 5 claimholders what they would receive in a liquidation under Chapter 7.[3] The debtor's argument collides with § 1111(b).

---

**2.** This is not to say that insider claims cannot be paid in a Chapter 11 plan. EBR appears to have a legitimate right to reimbursement of advances made for the operation of the debtor's business. *Compare Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (insider claim collusively acquired through a confession of judg-

ment not allowed a dividend); *Manufacturers Trust Co. v. Becker*, 338 U.S. 304, 70 S.Ct. 127, 94 L.Ed. 107 (1949) (insider bondholders who purchased bonds at market rates entitled to dividend on the same basis as other bondholders).

**3.** 11 U.S.C. § 1129(a)(7) provides in part:

Congress enacted § 1111(b) to alter the result under former Chapter XII that a debtor could write down non-recourse notes secured by real estate to the value of the collateral, discharge the deficiency and retain for the benefit of the owners any future increases in the value of property. *See Great National Life Ins. Co. v. Pine Gate Associates, Ltd.*, 2 BANKR.CT.DEC. (CRR) 1478 (Bankr.N.D.Ga.1976). Section 1111(b) restricts this opportunity by granting a non-recourse undersecured claimholder an option: the creditor can elect to have its entire claim treated as secured; or, the creditor can have a secured claim for the value of the collateral and an unsecured deficiency claim that exists only in Chapter 11. The creditor electing the latter option may force the Chapter 11 debtor to meet the requirements for cram down in § 1129(b) as to both its secured and "unnatural" unsecured claim.

The debtor's argument would interrupt application of § 1111(b) in partnership Chapter 11 cases to this extent: it would always be "fair" discrimination for purposes of § 1129(b)(1) to separately classify for more favorable treatment "natural" recourse claimholders and to separately classify for less favorable treatment claimholders with "unnatural" recourse only by virtue of § 1111(b). Half of the cram down barrier in § 1129(b)(1) would be automatically satisfied in every partnership case with respect to a dissenting "unnatural" recourse claimholder.

This court does not believe that §§ 1129(a)(7) and 723(a) conspire to neutralize the unfair discrimination test in

(7) With respect to each impaired class of claims or interests—
  (A) each holder of a claim or interest of such class—
    (i) has accepted the plan; or
    (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or ...
The question is not presented by this plan whether a Chapter 11 plan for a partnership with solvent general partners may pay objecting "natural" recourse claimholders less than the full amount of their claims.

§ 1129(b)(1) in partnership Chapter 11 cases where § 1111(b) is operative. The applicable sections can all be given appropriate effect at cram down in a partnership Chapter 11 case as follows: the existence of "natural" and "unnatural" recourse claimants is one factor to be considered in the unfair discrimination calculus; it is not outcome determinative.[4] For the reasons discussed above, the debtor's modified plan cannot be confirmed because it unfairly discriminates against the dissenting unsecured deficiency claim of FHLMC.

An appropriate order will be entered.

**4.** It may appear inconsistent to consider the special character of § 1111(b) "unnatural" recourse deficiency claims as a ground for separate classification, *see* Part III, *supra*, but not as outcome determinative of fair discrimination under § 1129(b)(1). This is precisely the balance struck by the Sixth Circuit in *U.S. Truck*, 800 F.2d at 587. The debtor has flexibility in this circuit to fashion separate classes of *similar* claims, even for the purpose of creating an accepting class under § 1129(a)(10). That there is a basis for separate classification does not predetermine whether the proposed treatment of the separate classes under the plan is fair discrimination for purposes of § 1129(b)(1).