**In re BEAVER OFFICE PRODUCTS, INC., Debtor.**

Bankruptcy No. 93–32819.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

July 27, 1995.

Thomas Schank, Toledo, OH, for debtor.

H. Buswell Roberts, Toledo, OH, for Al Simon and Janie Simon.

Ralph Lewis, Asst. U.S. Atty., Toledo, OH, for U.S.

Jeffrey Levinson and David Mayo, Cleveland, OH, for Deutsche Financial Services Corp.

Carolyn Buller and George von Mehren, Cleveland, OH, for Gen. Elec. Capital Corp.

Mark Rose, Toledo, OH, for United Bank, NA.

Amy Leizman, Office of the U.S. Trustee, Cleveland, OH.

## OPINION AND ORDER DENYING MOTION FOR CRAM DOWN AND DENYING CONFIRMATION OF CHAPTER 11 PLAN

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon Beaver Office Products, Inc.'s (the "DIP") amended plan of reorganization (the "Plan") to which General Electric Capital Corporation ("GECC"), Al Simon and Janie Simon (collectively the "Simons") have filed objections. The DIP has filed a motion in support of confirmation which the Court has treated as a motion for cram down under 11 U.S.C. § 1129(b). Upon consideration of the evidence adduced at the hearing on this matter,

the Court finds that the DIP's motion for cram down is not well taken and should be denied because the DIP has failed to comply with the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii). The Court further finds that confirmation of the Plan should be denied.

## FACTS
### THE DIP AND ITS RELATED ENTITIES

The DIP filed a petition under chapter 11 of title 11 on September 30, 1993.

John Elgin ("Elgin") and Horst Lorenz ("Lorenz") own the stock of C.O.B.E.A., Inc. ("COBEA"). COBEA owns 100% of the DIP's stock.

The DIP sells, rents and services office machines in northwest Ohio. In addition, the DIP sells office supplies.

Synco, U.S.A. ("Synco"), the DIP's wholly owned subsidiary, also sells, rents and services office machines in northwest Ohio. Although Synco has operated outside of chapter 11 during the pendency of the DIP's bankruptcy case, the Plan seeks to merge the DIP and Synco. *See* Plan, p. 8, Article 6.

Elgin and Lorenz (collectively the "Shareholders") own 100% of the stock in JJEL, Inc. ("JJEL") and L.E.E., Inc. ("LEE"). The DIP has leased a number of commercial properties from JJEL during the course of its reorganization. *See* Amended Disclosure Statement, p. 9.

Elgin testified that Elgin, Lorenz, JJEL and LEE are co-obligors on a note and mortgage between the DIP and United Bank (the "Bank") dated March 29, 1993. The Bank filed a claim in the instant bankruptcy case based on the DIP's obligation on this note and mortgage. The Plan fixes the DIP's obligation to the Bank at $1,900,000.00. *See* Plan, p. 5.

### THE PLAN'S TREATMENT OF THE OBJECTORS' CLASS OF CREDITORS

The DIP's Plan impairs the claims of GECC and the Simons (collectively the "Objectors"), which claims are provided for in Class IX of the Plan. *See* Plan, p. 7, Article 4. The DIP estimates the aggregate dollar value of the Objectors' claims at $1,715,-347.95. *See* Memorandum in Support of Confirmation, p. 6.

The DIP does not propose to pay the Objectors from the DIP's postpetition earnings. Instead, the DIP proposes to pay the Objectors from anticipated recoveries by the estate on certain bankruptcy causes of action, including preference actions against a number of the DIP's creditors. Furthermore, the Plan subordinates the Objectors' claim to the proceeds of these causes of action to certain scheduled payments to Sharp Electronics Co. *See* Plan, pp. 6–7.

### THE PROPOSED NEW VALUE CONTRIBUTION BY THE SHAREHOLDERS

The Shareholders propose to retain their equity interest in the reorganized DIP despite the fact that GECC and the Simons are impaired under the Plan. The DIP argues that the Shareholders may retain an equity interest in the reorganized DIP, notwithstanding the "absolute priority rule" of 11 U.S.C. § 1129(b)(2)(B)(ii), in exchange for a contribution of certain alleged "new value". The Shareholders propose to contribute: (1) $100,000 cash, (2) certain real estate held by JJEL and LEE subject to preexisting liens, and (3) an alleged administrative expense claim for postpetition rent asserted by JJEL.

***Whether the Shareholders' Proposed Contribution Represents "Money or Money's Worth"***

**The Shareholders' Proposed Cash Contribution**

Elgin testified that the Bank presently holds the sum of $100,000.00 which is to be contributed to the DIP by Elgin and Lorenz. These funds represent the proceeds from the sale of real estate owned by JJEL, which real estate was subject to a judgment lien in favor of the Bank. *See* Memorandum in Support of Confirmation, p. 10, para. 2.

**The Shareholders' Proposed Real Estate Contribution**

The DIP presented the testimony of Richard W. Mumford ("Mumford") who appraised

the properties to be contributed to the DIP by the Shareholders as of June 19, 1995 (collectively the "JJEL Properties") at an aggregate amount of $995,000.00. Since he was not retained to appraise the JJEL Properties until June 12, 1995, Mumford testified that he was unable to analyze "comparable" sales. Rather, Mumford testified that he calculated a "current market value" for each property based upon factors including his inspection of the property, his analysis of local commercial lending practices and his examination of court records as to the "current value" for each property.

The Court notes that Mumford's appraised value for the JJEL Properties represents a 30% decline in value from his 1992 appraisal which set the aggregate value of the JJEL Properties at $1,429,200.00. *See* Debtor's Exhibit 2.

Mumford testified that, except for the property located at 2412 Cable Court, the JJEL Properties are all "older commercial properties".

Mumford further testified that six of the ten JJEL Properties which the Shareholders propose to contribute to the DIP have experienced major physical deterioration. For example, Mumford testified that the property located at 204–206 East Center Street (the "Center Street Property") requires repairs to a leaking roof. In addition, the properties located at 119 and 119½ West Mansfield (the "Mansfield Properties") require repairs to leaks in the walls and repairs to the front sidewalks. Further, the property located at 59 Spiedel Avenue has a badly rusted roof, below-standard wiring and a loading dock which retains water.

According to Mumford, the DIP will likely be required to pay for major repairs on the Mansfield Properties, the Center Street Property, the properties located on Galen Street, and the properties located on Marion Avenue and Vennum Avenue if the JJEL Properties are "contributed" to the reorganized DIP.

The JJEL Properties are encumbered by a number of first mortgages in favor of various mortgagees. The aggregate amount of these first mortgages approximates $396,733.00.

*See* Amended Disclosure Statement, Exhibit B, p. 2. The Bank holds a second mortgage on the JJEL Properties. Elgin testified that the amount of this second mortgage approximates $2,100,000.00. *See* Amended Disclosure Statement, Exhibit B, p. 2. Thus, the liens on the JJEL Properties exceed the value of the JJEL Properties.

**The Shareholders' Proposed Contribution of an Alleged Administrative Expense Claim Held by JJEL Against the Estate**

The Shareholders also propose to contribute an alleged administrative expense claim for postpetition rent held by JJEL in the amount of $108,000.00.

The DIP did not offer any evidence as to JJEL's alleged administrative expense claim at the hearing. The Court further notes that the docket in this bankruptcy case does not indicate that the DIP filed a motion to assume the leases between JJEL and the DIP under 11 U.S.C. § 365(d)(4).

**Whether the Shareholders' Proposed Contribution is "Reasonably Equivalent" to the Shareholders' Proposed Equity Interest in the Reorganized DIP**

The DIP presented the testimony of Jack T. Sculfort ("Sculfort"), a financial consultant retained by Synco, in support of its contention that the Shareholders were providing "reasonably equivalent value" in exchange for the Shareholders' proposed equity interest in the DIP. Sculfort, who holds a Masters of Management Degree in Finance and Marketing from Northwestern University, has operated his own consulting firm for the past three years.

Sculfort testified as to the "Ongoing Enterprise Value" of the DIP on the date of confirmation of the Plan as set forth in Debtor's Exhibit 25. Sculfort explained that the DIP's Ongoing Enterprise Value calculation reflects the estimated value of the physical assets of the DIP and Synco on the date of confirmation plus the estimated value of certain intangible assets. Sculfort also testified as to the reorganized DIP's projected "start-up balance sheet" on confirmation. According to Sculfort, the DIP will have a negative equity value after the Shareholders' contemplated contribution under the Plan.

Wayne Basore ("Basore"), who has extensive experience in merger and acquisition transactions involving chapter 11 debtors, testified that his marketing efforts did not yield a prospective purchaser who was "coming with cash" to purchase either the DIP or Synco. *See* Debtor's Exhibit 24.

*Whether the Shareholders' Proposed Contribution is "Necessary" to the DIP's Reorganization*

The DIP presented the testimony of Sculfort and Robert J. Kowalski ("Kowalski") in support of its contention that the Shareholders' contribution to the reorganized DIP was "necessary" to the DIP's reorganization. Kowalski has been self-employed for the past six and one-half years as a financial consultant specializing in mergers and acquisitions. The Court shall hereinafter refer to Sculfort and Kowalski collectively as the "Consultants".

The Consultants testified that they were retained by Synco to "protect Synco's interests" in the DIP's chapter 11 case. Kowalski's testimony indicated that he also viewed the principals of Synco, Elgin and Lorenz, as his clients.

The Consultants testified that Synco has paid them each $85,000.00 to date for their services. Synco has also contracted to pay both Sculfort and Kowalski a $37,500.00 fee on confirmation of the DIP's Plan. Moreover, Sculfort testified that the DIP has proposed to retain both Sculfort and Kowalski as members of its "Advisory Board" subsequent to confirmation of the Plan. The Consultants will each work approximately 5 hours per month on the Advisory Board for which they will be compensated at a rate of $110.00 per hour.

Both Sculfort and Kowalski testified that they viewed the Shareholders' proposed contribution as necessary to the DIP's reorganization. Kowalski testified that the Shareholders' proposed contribution was necessary to permit the DIP to meet its financial projections.

## DISCUSSION
## APPLICABLE STATUTE

Section 1129(b) of title 11 provides that a Court shall confirm a plan of reorganization,

despite the objection of an impaired class of creditors such as the Objectors, where the plan otherwise complies with the requirements of § 1129(a) and:

(1) ... the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

... (B) With respect to a class of unsecured claims—

... (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b).

### BURDEN OF PROOF

The DIP bears the burden of proof in this contested matter by the preponderance of the evidence. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enterprises, Ltd., II (In re Briscoe Enterprises, Ltd., II),* 994 F.2d 1160, 1163–65 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

### WHETHER THE NEW VALUE EXCEPTION TO THE ABSOLUTE PRIORITY RULE SURVIVES THE ENACTMENT OF THE BANKRUPTCY CODE

The Sixth Circuit has recognized, albeit tacitly, the continued viability of the "new value" exception to the absolute priority rule under the Bankruptcy Code. *Teamsters Nat'l Freight Negotiating Committee v. U.S. Truck Co. (In re U.S. Truck Co.),* 800 F.2d 581, 588 (6th Cir.1986) (applying new value exception without discussion). Therefore, "courts in this circuit are bound by *U.S. Truck* to allow old equity to participate in the reorganized debtor under certain conditions". *In re Trevarrow Lanes, Inc.,* 183 B.R. 475, 489 n. 16 (Bankr.E.D.Mich.1995) (citations omitted).

## WHETHER THE DIP HAS SATISFIED THE NEW VALUE EXCEPTION TO THE ABSOLUTE PRIORITY RULE

■ The DIP has failed to satisfy the "new value" exception to the absolute priority rule.

The new value precept permits old equity owners to participate in a plan, without full payment to the dissenting creditors, if they make a contribution (1) in money or money's worth, (2) that is reasonably equivalent to the value of the new equity interests in the reorganized debtor, and (3) that is necessary for implementation of a feasible reorganization plan.

*In re Woodbrook Associates,* 19 F.3d 312, 319–20 (7th Cir.1994) (citing *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 121–22, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939)); *see In re U.S. Truck Co.,* 800 F.2d at 588 (examining whether stockholder's contribution was "substantial and 'essential' "); *Metropolitan Holding Co. v. Weadock,* 113 F.2d 207, 209 (6th Cir.1940) (stating that "before a stockholder [in a corporate reorganization] can retain his stock he must contribute the reasonable equivalent in money or money's worth of the participation accorded him").

### *Whether the Shareholders' Proposed Contribution to the Reorganized DIP Represents "Money or Money's Worth"*

The Shareholders' proposed contribution of $100,000.00 in cash to the DIP represents "money or money's worth".

However, the DIP has failed to establish that the Shareholders' proposed contribution of the JJEL Properties, which properties are encumbered by first and second liens in excess of their value, represents "money or money's worth". It would be anomalous indeed to permit the Shareholders to retain their equity interests in the DIP in circumstances where their proposed "contribution" could decrease the value of the estate.

The DIP argues, without citation of authority, that the Court may disregard the Bank's second lien position on the JJEL Properties in calculating the value of such properties based on a "marshaling of assets" theory. The DIP states that "[t]hese mortgages secure the same indebtedness which is secured by all of [the DIP] and Synco's assets". *See* Amended Disclosure Statement, Exhibit B, p. 2. Therefore, the DIP reasons, "[i]f all of [the DIP] and Synco's assets were liquidated to satisfy the [Bank's loan to the DIP and Synco] it is likely that each of the mortgages on the [JJEL Properties] would be satisfied as well". *See* Amended Disclosure Statement, Exhibit B, p. 2. The Court finds the DIP's hypothetical analysis unpersuasive. *Cf. In re Sovereign Group 1985–27, Ltd.,* 142 B.R. 702, 709 (E.D.Pa.1992) (concluding that shareholders' proposed contribution of "cash flow guarantee" was "contingent on future events" and "too amorphous to be properly included as part of the [shareholders'] new value contribution"). The fact remains that JJEL and LEE have no equity in the properties which the Shareholders seek to "contribute" to the DIP.

Moreover, Mumford testified that the JJEL Properties require substantial extraordinary maintenance expenditures. The DIP has not convinced the Court that the benefits which will be recognized by the estate upon contribution of the JJEL Properties outweigh the burden which such properties will place on the estate.

■ The Court further concludes that the Shareholders' forbearance from collecting the alleged administrative expense claim of an insider does not represent "money or money's worth". *See In re Snyder,* 967 F.2d 1126, 1131 (7th Cir.1992) (finding that debtor's proposal to obtain release of father's lien did not constitute new value as such proposed contribution was "not an up-front infusion of money or money's worth" and had " 'no place in the asset column of the balance sheet of the new [entity]' ") (quoting *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 122–23, 60 S.Ct. 1, 11, 84 L.Ed. 110 (1939)) (other citations omitted); *see also In re Mother Hubbard, Inc.,* 152 B.R. 189, 191 (Bankr.W.D.Mich.1993) (stating that "waiver of a proof of claim is not 'money or money's worth' within the meaning of new value") (citation omitted); *In re Creekside Landing, Ltd.,* 140 B.R. 713, 717 (Bankr.M.D.Tenn. 1992) (stating that "[f]orgiveness of debt by itself is not sufficient") (citation omitted); *cf. Sun Valley Newspapers, Inc. v. Sun World*

Corp. (In re Sun Valley Newspapers, Inc.), 171 B.R. 71, 78 (9th Cir. BAP 1994) (finding that release of claims by insiders did not represent "money or money's worth"). "A forgiveness of debt is only an accounting entry which affects ... the liability side of the balance sheet and creates no new funds." In re Snyder, 99 B.R. 885, 889 (Bankr. C.D.Ill.1989), aff'd, 144 B.R. 393 (C.D.Ill. 1990). Further, accepting arguendo the DIP's contention that a shareholder's forbearance from collecting the alleged administrative expense claim of an insider can constitute "money or money's worth", the DIP has failed to present sufficient evidence to establish the merits of JJEL's claim.

**Whether the Shareholders' Proposed Contribution to the DIP is "Reasonably Equivalent" to the Shareholders' Proposed Equity Interest in the Reorganized DIP**

■ The Court cannot conclude that the Shareholders' proposed contribution is "reasonably equivalent" to their proposed equity interest in the reorganized DIP because the DIP has failed to adduce sufficient evidence to establish its "reorganization value". Additionally, the DIP's calculation of the "value" to be received by the Shareholders on confirmation fails to account for a number of the benefits to be received by the Shareholders in return for their proposed contribution to the reorganized DIP.

■ A bankruptcy court must calculate the debtor's " 'reorganization value' " in order to determine whether a shareholder's proposed contribution constitutes reasonably equivalent value for an interest in a reorganized debtor. In re Montgomery Court Apartments of Ingham Cty., Ltd., 141 B.R. 324, 345 (Bankr.S.D.Ohio 1992). A chapter 11 debtor's "reorganization value" is based, in part, on the capitalized value of the chapter 11 debtor's future earnings. See In re Creekside Landing, Ltd., 140 B.R. 713, 718 (Bankr.M.D.Tenn.1992) (citation omitted) ("Capitalization of future earnings is the starting point for calculation of the value received by the contributor."); see also Muskegon Motor Stockholders Protective Committee v. Davis (In re Muskegon Motor Specialties), 366 F.2d 522, 525 (6th Cir.1966)

(finding capitalization of future earnings to be the proper method of valuation in Chapter X proceedings) (citation omitted). Although the DIP has presented projections as to its future earnings, the DIP has not presented the Court with sufficient evidence to calculate the capitalized value of the DIP's future earnings. See In re Lettick Typografic, Inc., 103 B.R. 32, 36 (Bankr.D.Conn.1989) (rejecting debtor's evidence as to rate of return which represented nothing more than an "arbitrary guess"); cf. In re Future Energy Corp., 83 B.R. 470, 499–502 (Bankr.S.D.Ohio 1988) (finding insufficient evidence to establish reorganization value where debtor presented no testimony regarding past earning record and no analysis of the factors which would influence future income). Consequently, the Court cannot conclude that the Shareholders' proposed contribution is "reasonably equivalent" to their proposed equity interest in the reorganized DIP.

Sculfort's testimony as to the "Ongoing Enterprise Value" calculation provided by the DIP in Debtor's Exhibit 25 and the "start-up balance sheet" for the reorganized DIP on confirmation does not support a finding as to the "reorganization value" of the DIP. See Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 526, 61 S.Ct. 675, 685, 85 L.Ed. 982 (1941) (stating that "[a] sum of values based on physical factors and assigned to separate units of ... property without regard to the earning capacity of the whole enterprise is plainly inadequate") (citation omitted). " '[T]he commercial value of property consists in the expectation of income from it.' " Consolidated Rock Products Co., 312 U.S. at 526, 61 S.Ct. at 685 (quoting Galveston, Harrisburg & San Antonio Railway Co. v. State of Texas, 210 U.S. 217, 226, 28 S.Ct. 638, 639, 52 L.Ed. 1031 (1908)) (other citation omitted). "It is plain that valuations for other purposes are not relevant to or helpful in a determination of that issue, except as they may indirectly bear on earning capacity." Consolidated Rock Products Co., 312 U.S. at 526, 61 S.Ct. at 685 (citations omitted).

Nor does Basore's testimony that his firm was unable to procure a buyer for the DIP or

Synco support the conclusion that the DIP has no reorganization value.

Moreover, the DIP's calculation of the "value" to be received by the Shareholders on confirmation fails to account for a number of the benefits to be received by the Shareholders in return for their proposed contribution to the reorganized DIP.

■ Even in circumstances where a debtor has no going concern value, "a debtor who retains his equity interest in the enterprise retains 'property'". *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 208, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). "Control and the right of management must be valued as consideration received by those who contribute new capital." *In re Creekside Landing, Ltd.,* 140 B.R. at 718; *cf. In re Trevarrow Lanes, Inc.,* 183 B.R. at 490 (finding that plan violated absolute priority rule because "[t]here [was] no indication in the record that other parties were offered the chance to make the purchase [of the debtor's equity] which [the debtor's shareholders] propose[d] to make").

Further,

> [b]enefits that are personal to an investor are a factor bearing on the value received by that investor. Dividends, distributions or even future salary from the debtor appropriately are considered.... Plan payments to creditors that release the investor from liability such as guaranties confer a benefit on the investor that must be valued. (citation omitted).

*In re Creekside Landing, Ltd.,* 140 B.R. at 718; *see In re S.A.B.T.C. Townhouse, Ass'n, Inc.,* 152 B.R. 1005, 1011 (Bankr.M.D.Fla. 1993) (considering value of personal benefit received by equity holders of debtor/nonprofit homeowners' association from use of debtor's common areas in concluding that equity holders contribution was not "reasonably equivalent" to retained equity interest); *cf. In re Trevarrow Lanes, Inc.,* 183 B.R. at 491 (stating that "[t]he assumption underlying the [Supreme Court's] equivalency requirement appears to have been ... that any 'price break' received by current shareholders with respect to the purchase of newly issued shares is in recognition of their ownership interest").

The Shareholders stand to reap substantial benefits from the reorganized DIP in addition to their retained equity interest.

First, the Amended Disclosure Statement indicates that Elgin and Lorenz will both receive "salary plus expenses not to exceed a total of $50,000" per year from the reorganized DIP. Amended Disclosure Statement, p. 14. *See In re Pullman Constr. Indus. Inc.,* 107 B.R. 909, 949–50 (Bankr.N.D.Ill. 1989) (finding that plan provision which provided debtor's equity holders' families with $225,000.00 in salaries represented "value" received by equity holders); *see also In re SM 104 Limited,* 160 B.R. 202, 229 (Bankr. S.D.Fla.1993) (noting that value received by equity holder may include the opportunity to be paid a salary by the reorganized debtor) (citations omitted).

Second, the DIP's treatment of the claim of Deutsche Financial Services Corp., formerly known as ITT Commercial Financial Corp., ("ITT") requires the execution of releases by ITT in favor of Lorenz and Elgin in exchange for the DIP's release of its preference claim against ITT. *See* Addendum to Amended Disclosure Statement, pp. 2–3. The DIP did not present evidence that Lorenz or Elgin possessed a claim against ITT. *Cf. In re Pullman Constr. Indus. Inc.,* 107 B.R. at 949 (finding that plan provision which proposed to release members of debtor's equity holders' families from preference liability represented "value" received by equity holders).

Third, Elgin and Lorenz will benefit from the DIP's payment of the secured obligations of JJEL and LEE as a priority claim of the DIP. *See In re Creekside Landing, Ltd.,* 140 B.R. at 719 (finding that debtor's settlement payment to creditor on debt which was guaranteed by equity holder represented "value" received by equity holder); *cf. In re Pullman Constr. Indus. Inc.,* 107 B.R. at 949 (finding that debtor's payment of tax obligations which relieved debtor's equity holders of personal tax liability represented "value" received by equity holders).

Fourth, the DIP's payment of the Bank's secured claim under the Plan benefits Elgin

and Lorenz because Elgin, Lorenz, JJEL and LEE are directly liable to the Bank on this obligation.

Fifth, to the extent that Elgin and Lorenz are liable as co-obligors or guarantors on Synco's debts, the DIP's payment of certain of Synco's debts as a priority claim benefits Elgin and Lorenz. *See* Plan, p. 3.

*Whether the Shareholders' Proposed Contribution is "Necessary" to the DIP's Reorganization*

■ The Consultants' testimony has not persuaded the Court that the Shareholders' proposed contribution of $100,000.00 cash is "necessary" to the DIP's reorganization.

The fact that Synco, which is to be merged with the DIP, has contracted to pay the Consultants a total of $75,000.00 on confirmation belies the DIP's assertion that the Shareholders' proposed contribution of $100,-000.00 is "necessary" to the DIP's reorganization. *See In re Trevarrow Lanes, Inc.,* 183 B.R. at 495 (rejecting testimony that proposed new value contribution was necessary to meet purported cash flow needs of reorganized debtor where such "needs were either overstated or manufactured out of whole cloth simply to satisfy the essentialness requirement"); *In re Albrechts Ohio Inns, Inc.,* 152 B.R. 496, 502 (Bankr.S.D.Ohio 1993) (held that shareholders' proposed contribution was not necessary where such proposed contribution was not essential to the operation of debtor's postconfirmation business); *cf. In re Woodbrook Associates,* 19 F.3d at 321 (finding that debtor's inclusion of "saving" provision in plan, which provision took effect upon court's rejection of proposed cash payment to debtor by debtor's equity holders, indicated that proposed cash payment was not necessary); *In re Tallahassee Associates, L.P.,* 132 B.R. 712, 719 (Bankr. W.D.Pa.1991) (finding debtor's assertion that capital contribution from former equity holders was necessary to be a pretext).

In view of the conclusory nature of the Consultants' testimony as to whether the Shareholders' proposed contribution was "necessary", the Court found such testimony to be of little probative value. The Consultants' substantial monetary interest in confirmation of the Plan has further diminished the evidentiary weight assigned to their testimony by the Court.

## THE DIP'S EQUITABLE ARGUMENTS

At trial, the DIP stressed the fact that all other creditors, as well as a majority in number of creditors within the Objectors' class, support the Plan. Nevertheless, "the principal creditors entitled to vote in the class of unsecured creditors ... objected to the proposed reorganization. This was their prerogative under the Code, and [this Court] must effectuate their decision." *Norwest Bank Worthington,* 485 U.S. at 207, 108 S.Ct. at 969.

■ Moreover, the fact that unsecured creditors could receive less in a liquidation than in a reorganization "can have no relevant bearing on whether a proposed plan is 'fair and equitable'.... Submission to coercion is not the application of 'fair and equitable' standards." *Los Angeles Lumber,* 308 U.S. at 123, 60 S.Ct. at 11.

In light of the foregoing, it is therefore

ORDERED that the DIP's motion for cram down be, and it hereby is, denied. It is further

ORDERED that confirmation of the Plan be, and it hereby is, denied. It is further

ORDERED that the Court shall hold a hearing to determine whether the DIP's chapter 11 case should be converted to a case under chapter 7 or dismissed pursuant to 11 U.S.C. § 1112(b) on Friday August 18, 1995 at 10:00 o'clock A.M., Courtroom No. 1, Room 103, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio. It is further

ORDERED that the Clerk of this Court shall provide notice to the DIP and all creditors of this ORDER in accordance with Fed. R.Bankr.P. 2002(a)(5).